[Crim. No. 19921. May 30, 1978.]

In re MICHAEL C., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
MICHAEL C., Defendant and Appellant.

## COUNSEL

Wilbur F. Littlefield, Public Defender, John J. Gibbons, Kenneth I. Clayman, Patricia Rice and Albert J. Menaster, Deputy Public Defenders, for Defendant and Appellant.

Paul Halvonik, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, and Janice L. Feinstein, Deputy State Public Defender, Peter Bull and Robert L. Walker as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—Defendant Michael C., a 16-year-old minor, appeals from juvenile court orders sustaining allegations that he comes within Welfare and Institutions Code section 602 for having killed Robert Yeager (Pen. Code, § 187), adjudicating him to be a ward of the court, and committing him to the Youth Authority. We concur in defendant's contention that his confession was obtained in violation of the rules announced in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] and subsequent cases, and that its admission into evidence constituted reversible error.

On February 4, 1976, police interrogated defendant at the Van Nuys police station. After advising defendant of his *Miranda* rights, the police interrogating officer continued the conversation as follows:

"Q. . . . Do you understand all of these rights as I have explained them to you?

"A. Yeah.

"Q. Okay, do you wish to give up your right to remain silent and talk to us about this murder?

"A. What murder? I don't know about no murder.

"Q. I'll explain to you which one it is if you want to talk to us about it.

"A. Yeah, I might talk to you.

"Q. Do you want to give up your right to have an attorney present here while we talk about it?

"A. *Can I have my probation officer here?*

"Q. Well I can't get a hold of your probation officer right now. You have the right to an attorney.

"A. How I know you guys won't pull no police officer in and tell me he's an attorney?

"Q. Huh?

"A. [Repeat of last answer.]

"Q. Your probation officer is Mr. Christiansen.

"A. Yeah.

"Q. Well I'm not going to call Mr. Christiansen tonight. There's a good chance we can talk to him later, but I'm not going to call him right now. If you want to talk to us without an attorney present, you can. If you don't want to, you don't have to. But if you want to say something, you can, and if you don't want to say something you don't have to. That's your right. You understand that right?

"A. Yeah.

"Q. Okay, will you talk to us without an attorney present?

"A. Yeah I want to talk to you." (Italics added.)

Later during the interrogation, defendant confessed.

■ We shall point out that under the rules established in *Miranda* v. *Arizona, supra,* and further elaborated in this state in *People* v. *Burton* (1971) 6 Cal.3d 375 [99 Cal.Rptr. 1, 491 P.2d 793], the police unlawfully obtained defendant's confession. Defendant's request to see his probation officer at the commencement of interrogation negated any possible willingness on his part to discuss his case with the police; it thereby invoked his Fifth Amendment privilege.

Noting that an environment of incommunicado police-dominated interrogation "is created for no purpose other than to subjugate the individual to the will of his examiner," the United States Supreme Court

in *Miranda,* concluded that "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." (*Miranda v. Arizona, supra,* 384 U.S. 436, 457, 467 [16 L.Ed.2d 694, 713-714, 719].) The Supreme Court in *Miranda* set down four warnings which must be given to persons in "custodial surroundings," and then specified the protections that must be afforded after the rendition of such warnings: "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. [Fn. omitted.] At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." (*Miranda v. Arizona, supra,* 384 U.S. 436, 473-474 [16 L.Ed.2d 694, 723].)

Recognizing that the suspect may not expressly state that he wants an attorney, we have held in previous cases that any conduct which "reasonably appears inconsistent with a present willingness on the part of the suspect to discuss his case freely and completely with police *at that time*" amounts to an invocation of the Fifth Amendment privilege. (*People v. Randall* (1970) 1 Cal.3d 948, 956 [83 Cal.Rptr. 658, 464 P.2d 114].) We have variously held that a suspect's refusal to sign a waiver of his constitutional rights, a suspect's statement, "Call my parents for my attorney," and a suspect's telephone call to his attorney, in and of themselves each invokes the Fifth Amendment privilege. (*People v. Fioritto* (1968) 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625]; *People v. Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323]; *People v. Randall, supra,* 1 Cal.3d 948.)

In this case we must decide whether a minor's request for his probation officer's presence "reasonably appears inconsistent with a present willingness" concurrently to ":discuss his case freely and completely with police. . . ." (*People v. Randall, supra,* 1 Cal.3d 948, 956.) In *People v. Burton, supra,* 6 Cal.3d 375, we held that a minor's request to consult his parents invoked the minor's Fifth Amendment privilege. As we stated there: "It would certainly severely restrict the 'protective devices' required by *Miranda* in cases where the suspects are minors if the only call for help which is to be deemed an invocation of the privilege is the call for an attorney. It is fatuous to assume that a minor in custody will be

in a position to call an attorney for assistance and it is unrealistic to attribute no significance to his call for help from the only person to whom he normally looks—a parent or guardian. It is common knowledge that this is the normal reaction of a youthful suspect who finds himself in trouble with the law." (*People* v. *Burton, supra,* 6 Cal.3d 375, 382.)

In view of the emphasis which the juvenile court system places upon the close relationship between a minor and his probation officer,[1] and in light of the probation officer's instructions in the present case that his ward contact him immediately in case of trouble,[2] the "normal reaction" of the minor here would be to request consultation with his probation officer. Fearing that the police would take advantage of his ignorance,[3] Michael wanted and needed the advice of someone whom he knew and trusted. He therefore asked for his probation officer—a personal advisor who would understand his problems and needs and on whose advice the minor could rely. By analogy to *Burton,* we hold that the minor's request for his probation officer—essentially a "call for help"—indicated that the minor intended to assert his Fifth Amendment privilege. By so holding, we recognize the role of the probation officer as a trusted guardian figure who exercises the authority of the state as *parens patriae* and whose duty it is to implement the protective and rehabilitative powers of the juvenile court.

The Attorney General contends, however, that the request here for a probation officer can be distinguished from the request in *Burton,* for, instead of affording the counsel and protection of a parent, the probation officer represents an "arm of the prosecutorial system." That the probation officer serves as a peace officer (Pen. Code, § 830.5) and has been charged with the duty to file a petition alleging that a minor committed the claimed offense (Welf. & Inst. Code, § 650), however, does not alter the fact that the probation officer is frequently the person to whom a minor might turn for help on such matters as to whether or not he should obtain an attorney. When Michael C. asked to see his probation officer, he was not seeking to confide in a prosecutor.

[1] See *Bryan* v. *Superior Court* (1972) 7 Cal.3d 575, 587 [102 Cal.Rptr. 831, 498 P.2d 1079]; *In re Gladys R.* (1970) 1 Cal.3d 855, 860, footnote 7 [83 Cal.Rptr. 671, 464 P.2d 127].

[2] The probation officer testified at trial that he had "instructed Michael that at any time he has a police contact, even if they stop him and talk to him on the street, he is to contact me immediately," reasoning that "many times the kids don't understand what is going on, and what they are supposed to do relative to police. . . ."

[3] Clearly defendant's fear that the police would bring in a police officer under the pretext of providing Michael with an attorney was real enough. As the interrogating officer said to Michael later in the interview, "Well we don't always play fair, do we?"

The People assert that once we extend our holding in *Burton* to include a request to see a probation officer, we cannot reasonably distinguish a request for consultation with one's football coach, music teacher or clergyman. ▋ The request for the probation officer, however, is entirely distinguishable; the probation officer is an official appointed pursuant to legislative enactment "to represent the interests" of the juvenile (Welf. & Inst. Code, § 280). Since the inception of the juvenile court system the probation officer has borne the duty to advise and care for the juvenile defendant. Consultation with a probation officer thus acts as a "protective [device] . . . to dispel the compulsion inherent in custodial surroundings" (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 458 [16 L.Ed.2d 694, 714]) precisely because the probation officer is particularly well-suited to provide the minor suspect with "help in how to conduct himself with police" (*People* v. *Burton, supra,* 6 Cal.3d 375, 383).

▋ The People further rely on *People* v. *Lara* (1967) 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202], and *In re Dennis M.* (1969) 70 Cal.2d 444 [75 Cal.Rptr. 1, 450 P.2d 296], cases in which we held that the "totality of the circumstances" governed whether a juvenile had the capacity to understand the meaning of the warnings given him, and knowingly and intelligently to waive his *Miranda* rights. In the present case, the People argue that Michael C. is an "older juvenile" who has had previous experience with the police. Contending that nothing in the record suggests that the police coerced Michael by their questioning, the People thus conclude that, based on the totality of circumstances, the trial court properly ruled that Michael's confession was voluntary.

In cases in which we must decide whether a confession is voluntary or coerced we have looked to the "totality of the circumstances" to find whether the confessant was capable of understanding the interrogation and voluntarily confessed or whether his will was actually overcome. Here, however, we face conduct which, regardless of considerations of capacity, coercion or voluntariness, per se invokes the privilege against self-incrimination. Thus our question turns not on whether the defendant had the ability, capacity or willingness to give a knowledgeable waiver, and hence whether he acted voluntarily, but whether, when he called for his probation officer, he exercised his Fifth Amendment privilege. We hold that in doing so he no less invoked the protection against self-incrimination than if he asked for the presence of an attorney.

Finally, in *People* v. *Randall, supra,* 1 Cal.3d 948, 957, we held that the People bear the burden of demonstrating "that a questioned confession

meets the constitutional tests of admissibility." Similarly in *Burton* we placed the burden on the People to show that a request by a minor to see his parents "is not an indication of that minor's unwillingness to continue talking with police or of a desire for help in how to conduct himself with police. . . ." (*People* v. *Burton, supra,* 6 Cal.3d 375, 383.) ▮ Accordingly, we hold here that the People must meet the burden of proving that a minor who requests to see his probation officer does not intend to assert his Fifth Amendment privilege. ▮ In the instant case, the People did not meet that burden.[4]

Because the police did not cease custodial interrogation immediately upon defendant's exercise of his Fifth Amendment privilege, the trial court should not have admitted the confession which was obtained by subsequent questioning. The admission of such confession was prejudicial per se and compels reversal of the orders. (*People* v. *Burton, supra,* 6 Cal.3d 375, 384; *People* v. *Randall, supra,* 1 Cal.3d 948, 958.)

The judgment is reversed.

Mosk, J., Richardson, J., and Newman, J., concurred.

**MOSK, J.**—While under these facts I must concur in the majority opinion, I have serious reservations about the ultimate result.

The majority concede, as they must, that the probation officer serves as a peace officer (Pen. Code, § 830.5) and has the duty to file charges against a minor (Welf. & Inst. Code, § 650), including those arising from the instant circumstances. Thus, regardless of the healthy rapport which may have developed between this arrestee and his probation officer, duties of the latter compel him to render reasonable assistance to his fellow peace officers.

---

[4]The dissent suggests that although it is clear in the present case that defendant. requested to see his probation officer out of a desire for help in how to conduct himself with the police (cf. *People* v. *Burton, supra,* 6 Cal.3d at p. 383), we should not find that such a request invoked defendant's Fifth Amendment rights. The dissent apparently argues that no invocation of Fifth Amendment rights occurred, because once defendant's request was denied, defendant was willing to continue the interrogation with the police. Under such an analysis, of course, the police could ignore a defendant's request for an attorney and still argue that any subsequent confession was properly obtained, since the defendant was "willing" to continue the interrogation in the absence of his attorney. The dissent's approach flies directly in the face of *Miranda,* which as we have noted, explicitly holds that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." (384 U.S. at p. 474 [16 L.Ed.2d at p. 723]. See also *People* v. *Burton, supra,* 6 Cal.3d at p. 384.)

If this minor had contacted his attorney, or his parents (*People* v. *Burton* (1971) 6 Cal.3d 375 [99 Cal.Rptr. 1, 491 P.2d 793]), either or both might have advised him to remain silent, that his legal prospects would be enhanced by aloofness rather than cooperation, that the burden of proving the case against him should not be eased by voluntary disclosures.

May a probation officer, a statutory peace officer, properly give that kind of advice, even if he believes it to be in the best interests of the minor? I doubt it. Consistent with his public responsibilities, the probation officer must counsel his charge to be cooperative and to help solve the crime, even if by so doing the minor implicates himself in a serious felony.

Thus I am concerned that ultimately the minor will not benefit by deeming his probation officer to be a surrogate attorney or parent, a role that the officer cannot objectively assume. Where a conflict between the minor and the law arises, the probation officer can be neither neutral nor in the minor's corner.

Still another potential problem looms on the horizon. When the probation officer, a statutory peace officer, advises the minor to cooperate with the police, perhaps even to confess, the minor is likely to complain later of what he will perceive as pervasive law enforcement pressure. He may argue, with some rationality, that he had been subjected to a variation of the Mutt-and-Jeff technique criticized in *Miranda*: initial interrogating by overbearing officers, then comforting by a presumably friendly and gentle peace officer in the guise of a probation officer. (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 452 [16 L.Ed.2d 694, 710-711, 86 S.Ct. 1602, 10 A.L.R.3d 974].) The bottom line is that pursuant to the technique he will have submitted to interrogation. When that argument is made to us, as it inevitably will be one day, we will face a difficult problem.

With all my misgivings, however, I agree with the majority that the People have not met the burden imposed by *People* v. *Randall* (1970) 1 Cal.3d 948, 957 [83 Cal.Rptr. 658, 464 P.2d 114], of establishing that the "questioned confession meets the constitutional tests of admissibility."

Bird, C. J., concurred.

**CLARK, J.,** Dissenting.—The question presented is whether the People carried their burden of proving that defendant did not intend to assert his privilege against self-incrimination when he asked to see his probation officer. Reviewing this question in light of the totality of circumstances shown by the record, I, like the trial court and the unanimous Court of Appeal, conclude that the People did carry their burden. Accordingly, I would affirm the judgment.

Because of confusion created by the majority, it is necessary to emphasize that this question is one of fact to be decided in light of the *totality of circumstances shown by the record.*

On the one hand, the majority appear to hold that defendant's request for his probation officer constituted, per se, an invocation of his Fifth Amendment privilege, foreclosing consideration of the "totality of the circumstances" to determine whether his request was actually intended as such an invocation. "In cases in which we must decide whether a confession is voluntary or coerced we have looked to the 'totality of the circumstances' to find whether the confessant was capable of understanding the interrogation and voluntarily confessed or whether his will was actually overcome. Here, however, we face conduct which, regardless of considerations of capacity, coercion or voluntariness, per se invokes the privilege against self-incrimination." (*Ante,* p. 477.)

On the other hand, in the succeeding paragraph the majority appear to recognize that our inquiry into whether defendant asserted his Fifth Amendment privilege is not concluded when we find, what is not disputed, that he asked for his probation officer, but that we must proceed to inquire whether his request was meant as an assertion of the privilege. "[W]e hold here that the People must meet the burden of proving that a minor who requests to see his probation officer does not intend to assert his Fifth Amendment privilege." (*Ante,* pp. 477-478.) This recognition of the People's right to assume that burden is compelled by *People* v. *Burton* (1971) 6 Cal.3d 375 [99 Cal.Rptr. 1, 491 P.2d 793]. "[W]e hold that when, as in the instant case, a minor is taken into custody and is subjected to interrogation, without the presence of an attorney, his request to see one of his parents, made at any time prior to or during questioning, must, *in the absence of evidence demanding a contrary conclusion,* be construed to indicate that the minor suspect desires to invoke his Fifth Amendment privilege." (*Id.,* at pp. 383-384, italics added.)

What term of art applies to the evidence bearing on the question whether defendant intended to assert his privilege against self-incrimination when he asked for his probation officer? The term that comes to mind is the "totality of the circumstances" shown by the record. However, quibbles over terminology are of little moment so long as it is clearly understood that one must consider the circumstances—the "context," if you prefer—of defendant's request in order to determine its significance.

The question whether defendant's request for his probation officer manifested an unwillingness to proceed with the interrogation in his absence is readily resolved by simply reading the succeeding portion of the transcript. After being informed that his probation officer would not then be summoned, defendant was again advised of his right to remain silent and again asked if he understood that right. Replying that he did understand it, defendant reiterated his willingness to continue the interrogation. (*Ante*, pp. 473-474.)

Recognizing that it is a question of fact whether defendant intended to assert his privilege against self-incrimination by requesting his probation officer, the distinguished trial judge[1] concluded that the record clearly indicated that defendant was willing to proceed with the interrogation in the absence of his probation officer. Affirming the judgment, the Court of Appeal unanimously concluded that "the 'totality of the circumstances' affords sufficient 'affirmative proof' of an intent to waive the privilege." After independently reviewing the record I reach the same conclusion and lament the fact that the majority free a confessed murderer.[2]

Manuel, J., concurred.

---

[1]That Judge Bonnie Lee Martin is the author of one of the most widely used handbooks on search and seizure issues is but one indication of her scholarship and sensitivity to the constitutional issues present in situations involving the admissibility of evidence. (See Martin, Comprehensive Cal. Search and Seizure (1971).)

[2]The Court of Appeal observed that without the confession the balance of the evidence is insufficient to sustain the conviction.