FARE, ACTING CHIEF PROBATION OFFICER v. MICHAEL C.

No. A–33.  Decided July 28, 1978

See: 21 Cal. 3d 471, 579 P. 2d 7.

MR. JUSTICE REHNQUIST, Circuit Justice.

Applicant requests a stay of enforcement of a judgment of the California Supreme Court ordering a rehearing for respondent under Cal. Welf. & Inst. Code Ann. § 602 (West Supp. 1978). The Superior Court of Los Angeles County had originally committed respondent to the California Youth Authority as a ward of the court after finding that he was guilty of murder. That committal was affirmed by the California Court of Appeal. On May 30, 1978, the California Supreme Court reversed, holding that a confession relied on by the Superior Court was inadmissible under *Miranda* v. *Arizona*, 384 U. S. 436 (1966). *In re Michael C.*, 21 Cal. 3d 471, 579 P. 2d 7. It ruled that when a juvenile, during the course of a custodial interrogation, requests the presence of his probation officer, all interrogation must cease and any statement taken after that point is inadmissible at the adjudication hearing. I have decided to grant the stay so that the full Court can consider the applicant's petition for certiorari and the important *Miranda* questions that underlie it.

Three pertinent inquiries are usually made in evaluating a request for stay of enforcement of an order of a state court: whether that order is predicated on federal as opposed to state grounds; whether the "balance of equities" militates in favor of the relief requested by applicant; and whether it is likely that four Justices of this Court will vote to grant certiorari. Recognizing that the case for a stay is a relatively close one, I conclude that each of these questions must be answered in the affirmative.

The decision of the California Supreme Court is clearly premised on the Federal Constitution. It is posited as an extrapolation of *Miranda* and there are no references to state statutory or constitutional grounds. The California Supreme Court cases relied on were also efforts to determine the implications of *Miranda* and did not purport to construe the State Constitution. See *People* v. *Burton,* 6 Cal. 3d 375, 491 P. 2d 793 (1971); *People* v. *Randall,* 1 Cal. 3d 948, 464 P. 2d 114 (1970).

The "balance of equities" presents a more difficult question. Applicant argues that a stay is imperative, because a rehearing in Superior Court would preclude this Court's review of the California Supreme Court's decision. If on retrial the respondent is committed to the Youth Authority on the basis of evidence other than the confession, the instant controversy will be moot.* On the other hand, should the Superior Court find the remaining evidence insufficient to order a committal, this prosecution would terminate and any effort by the State to appeal such a determination would be bound to raise serious if not insuperable difficulties under both California law and the Double Jeopardy Clause. See *Miranda* v. *Arizona, supra,* at 497–499, and n. 71.

---

*The California Court of Appeal suggested that if the confession were suppressed, there would be insufficient evidence in the record to sustain a finding of guilt. *In re Michael C.,* 21 Cal. 3d 471, 481 n. 2, 579 P. 2d 7, 13 n. 2 (1978) (Clark, J., dissenting).

The law enforcement efforts of the State of California will be substantially affected by the California Supreme Court's decision. The ruling builds upon the *Miranda* prescription that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present," 384 U. S., at 474; but it goes well beyond the express language of the *Miranda* decision. For example, the Supreme Court of California said in the course of its opinion here:

> "Michael wanted and needed the advice of someone whom he knew and trusted. He therefore asked for his probation officer—a personal advisor who would understand his problems and needs and on whose advice the minor could rely. By analogy to [*People* v. *Burton,* 6 Cal. 3d 375, 491 P. 2d 793 (1971)], we hold that the minor's request for his probation officer—essentially a 'call for help'—indicated that the minor intended to assert his Fifth Amendment privilege. By so holding, we recognize the role of the probation officer as a trusted guardian figure who exercises the authority of the state as *parens patriae* and whose duty it is to implement the protective and rehabilitative powers of the juvenile court.

> .        .        .        .        .

> "Here . . . we face conduct which, regardless of considerations of capacity, coercion or voluntariness, per se invokes the privilege against self-incrimination. Thus our question turns not on whether the defendant had the ability, capacity or willingness to give a knowledgeable waiver, and hence whether he acted voluntarily, but whether, when he called for his probation officer, he exercised his Fifth Amendment privilege. We hold that in doing so he no less invoked the protection against self-incrimination than if he asked for the presence of an attorney." 21 Cal. 3d, at 476–477, 579 P. 2d, at 10–11.

The court explicitly eschewed a "totality of circumstances" analysis; respondent's waiver of his *Miranda* rights, his experi-

ence in custodial settings, or any other factor that might bear on the voluntariness of his confession was simply irrelevant.

Although the California Supreme Court made some effort to limit its holding to probation officers, it is unclear what types of requests authorities must now regard as *per se* invocations of the Fifth and Fourteenth Amendment privilege against self-incrimination. Many relationships could be characterized as ones of trust and understanding; indeed, it seems to me that many of these would come to mind long before the probationer-probation officer relationship. In fact, under California law the probation officer is charged with the duty to file charges against a minor if he has any knowledge of an offense. Cal. Welf. & Inst. Code Ann. §§ 650, 652–655 (West Supp. 1978). Certainly that also encompasses a duty of reasonable investigation. It would be a breach of that duty for the probation officer to withhold information regarding an offense or advise a probationer that he should not cooperate with the police. These considerations troubled Justice Mosk, who noted in his separate concurrence in this case that "[w]here a conflict between the minor and the law arises, the probation officer can be neither neutral nor in the minor's corner." 21 Cal. 3d, at 479, 579 P. 2d, at 12. To treat a request for the presence of an enforcement officer as a *per se* invocation of the right to remain silent cannot but create serious confusion as to where the line is to be drawn in other custodial settings.

Respondent asserts that this injury is outweighed by the fact that a stay delays ultimate disposition of the charges against him, and that he has been in the custody of the Youth Authority for over two years. Obviously the weight of this argument depends on one's view of the merits. If certiorari is granted in this case and a majority of this Court finds respondent's confession admissible as a matter of federal constitutional law, then the original disposition order will not be disturbed and detention during deliberations in this Court will not exceed the time set in the original order.

Ultimately, therefore, my decision to stay enforcement of the California Supreme Court's order must rest on my assessment of the likelihood that four Justices will vote to grant certiorari and that the applicant will prevail on the merits. This Court is tendered many opportunities by unsuccessful prosecutors and unsuccessful defendants to review rulings predicated on *Miranda* and related cases, and, as with many issues that recur in petitions before this Court, we decline most such tenders. But some pattern has developed in the handling of *Miranda* issues that, I think, portends a substantial likelihood of success for the instant petition.

*Miranda* v. *Arizona* was decided by a closely divided Court in 1966. While the rigidity of the prophylactic rules was a principal weakness in the view of dissenters and critics outside the Court, its supporters saw that rigidity as the strength of the decision. It afforded police and courts clear guidance on the manner in which to conduct a custodial investigation: if it was rigid, it was also precise. But this core virtue of *Miranda* would be eviscerated if the prophylactic rules were freely augmented by other courts under the guise of "interpreting" *Miranda,* particularly if their decisions evinced no principled limitations. Sensitive to this tension, and to the substantial burden which the original *Miranda* rules have placed on local law enforcement efforts, this Court has been consistently reluctant to extend *Miranda* or to extend in any way its strictures on law enforcement agencies. I think this reluctance is shown by our decisions reviewing state-court interpretations of *Miranda.* As we noted in *Oregon* v. *Hass,* 420 U. S. 714, 719 (1975), "a State may not impose . . . greater [*Miranda*] restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them." (Emphasis in original.)

In *Michigan* v. *Tucker,* 417 U. S. 433 (1974), we overturned a federal habeas ruling that all evidence proving to be the fruit of statements made without full *Miranda* warnings must

be excluded at the subsequent state criminal trial. We overruled a State Supreme Court in *Oregon* v. *Hass, supra;* we held that a statement was admissible for purposes of impeachment even though it was given after the defendant indicated a desire to telephone an attorney. This Court has also recently rejected contentions that a confession was inadmissible after a reiterated *Miranda* warning if some hours earlier the defendant had indicated he did not want to discuss a different charge. *Michigan* v. *Mosley,* 423 U. S. 96 (1975). These are not to suggest that refusals to extend *Miranda* always please prosecutors, see *Brown* v. *Illinois,* 422 U. S. 590 (1975), or that this Court has shunned all logical developments of that opinion, see *Doyle* v. *Ohio,* 426 U. S. 610 (1976). But the overall thrust of these cases represents an effort to contain *Miranda* to the express terms and logic of the original opinion.

In our most recent pronouncement on the scope of *Miranda,* we found that the Oregon Supreme Court's expansive definition of "custodial interrogation" read *Miranda* too broadly. *Oregon* v. *Mathiason,* 429 U. S. 492 (1977). Our reason for so ruling is probably best encapsulated in an observation we made in a similar context: "[S]uch an extension of the *Miranda* requirements would cut this Court's holding in that case completely loose from its own explicitly stated rationale." *Beckwith* v. *United States,* 425 U. S. 341, 345 (1976). I think the decision of the California Supreme Court also risks cutting *Miranda* loose from its doctrinal moorings. The special status given legal counsel in *Miranda*'s prophylactic rules is related to the traditional role of an attorney as expositor of legal rights and their proper invocation. He is also the principal bulwark between the individual and the state prosecutorial and adjudicative system. A probation officer simply does not have the same relationship to the accused and to the system that confronts the accused, and I believe this fact would lead four Justices of this Court to grant the State's petition for certiorari in this case.

The request for stay of the judgment of the California Supreme Court pending consideration of a timely petition for certiorari by the applicant is accordingly granted, to remain in effect until disposition of the petition for certiorari. If the petition is granted, this stay is to remain in effect until this Court decides the case or until this Court otherwise orders.