[Civ. No. 41711. First Dist., Div. Two. Nov. 8, 1978.]

In re ANTHONY J., a Person Coming Under the Juvenile Court Law.
JOSEPH J. BOTKA, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
ANTHONY J., Defendant and Appellant.

COUNSEL

Evans, Farber & Froneberger and Gene A. Farber for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and Linda Ludlow, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TAYLOR, P. J.—Defendant, Anthony J., a 15-year-old minor, appeals from orders of the juvenile court declaring him a ward of the juvenile court, pursuant to Welfare and Institutions Code section 602, and committing him to the Youth Authority as the result of two counts of first degree murder (Pen. Code, § 187), nine counts of first degree robbery (seven in violation of Pen. Code, §§ 211, 664/211), one count of second degree robbery (Pen. Code, § 211), and one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)). Defendant argues that: 1) his commitment was invalid as it was based on a confession obtained without an intelligent, knowledgeable and voluntary waiver of his constitutional rights and was the result of coercive tactics; 2) his confession was also inadmissible as it was obtained during an illegal detention, as he was not taken to a probation officer immediately after his arrest, as required by Welfare and Institutions Code section 626; 3) the evidence was insufficient to prove the juvenile court's findings beyond a reasonable doubt; and 4) the court's denial of his request for a jury trial deprived him of his Sixth Amendment right to a jury trial and also violated the equal protection and due process clauses of the United States Constitution. We have concluded that in view of *People. v. Jimenez,* 21

Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672], recently decided by our Supreme Court, the instant matter must be reversed for a redetermination of the voluntariness of defendant's confession.

The record reveals the following pertinent facts: On January 3, 1977, Keven Troy Austin, a minor, was shot in the arm. On January 5, Austin told Officers Daley and Cisneros that defendant had shot him. The two officers contacted Mr. Ellis, defendant's stepfather, and told him that they were investigating a shooting and his stepson was a suspect. Mr. Ellis informed the officers that he had the gun and produced a .38 caliber weapon. At 1:40 p.m., Richard Grzybowski, the San Francisco Police Department ballistics expert, was asked to test the weapon and compare its bullets with three bullets used in the murders of Mr. Golden and Mr. Smith in November 1976 and the shooting of Austin.

The day before, January 4, defendant had run away with his girl friend Yolanda Walker. They spent the night in an abandoned house near defendant's home. Yolanda told him that she was pregnant. On January 5, defendant and Yolanda returned to Yolanda's house; her father, who had a gun, threatened to have defendant killed; her mother called the police, who arrived around 2:40 p.m.

Defendant was arrested and taken to the juvenile bureau at the hall of justice where, at 3 p.m., he was advised of his *Miranda* rights and was interviewed for 30 minutes by Officers Cisneros and Daley about the assault with a deadly weapon on Austin. Defendant indicated that he understood his rights and agreed to speak to the officers. Defendant denied any involvement in the Austin matter. After the interview, defendant was allowed to speak to his parents who were informed that he was a suspect in the Austin incident. Defendant was then placed in a holding cell, a 10 × 14-foot room with a window in the door and a concrete bench. Defendant had slept only an hour the preceding night; he promptly went to sleep. About 5 p.m., the police were informed that the criminologist had achieved a tentative match[1] of the bullets used in the Golden and Smith murders and bullets fired from the gun belonging to defendant's stepfather.

Accordingly, about 6 p.m., defendant was awakened and taken to the homicide detail and turned over to Officers Cleary and Falzon. These officers, along with three others, took defendant into an interrogation

---

[1]The expert made a positive match on January 6, after he had been informed about defendant's confession.

room, advised him of his rights, and informed him that he was a suspect in two homicides and several robberies.[2] Defendant indicated that he understood his rights and was willing to talk. Officer Cleary and the others left the room to get a tape recorder.

At the suppression hearing, defendant testified that while he was left alone in the room with Falzon, Falzon stated that he would be caught and would be put in jail until he was 80 and reiterated "You help me and I help you." Defendant agreed to confess and Falzon read four or five police reports to him before Cleary returned. Falzon indicated that he would try to make it easier on defendant and tell the court he had been 100 percent cooperative.

Falzon was not called to refute the defendant's testimony. Cleary, however, testified that he was gone from the room only a few minutes or seconds and in any event not long enough for Falzon to converse as defendant testified and to read through several police reports. Cleary emphasized that neither threats nor promises were made and that defendant was "most cooperative."

The other major witness at the suppression hearing was Dr. Hubert Levenson, a defense psychiatrist, who examined defendant on January 7 and 8, and testified that defendant was functioning as an 11 year old, thinking in concrete, not abstract, terms; and, that as a result of the separation of his parents and his girl friend's pregnancy, defendant had

---

[2]Each of these occurred in San Francisco as follows: Around midnight on September 26, 1976, Mr. Dougherty and Ms. Cochran were about to enter their car parked on Greenwich Street when two black youths came up behind them with guns and held them up, took Cochran's purse, and fired as they left. About 7:15 p.m. on November 12, 1976, Mr. and Mrs. Toupin were walking near the Palace of Fine Arts when two black youths ran up behind them and demanded money and jewelry at gunpoint; they took some money and a watch.

Around midnight on November 12, 1976, DelValle, May and Conner were near Walnut and Washington Streets when two black youths came out from behind a retaining wall and robbed them at gunpoint of rings, watches and money. About 10 p.m. on November 17, 1976, Ms. McKay was walking near Jackson and Walnut Streets when three black youths in a blue American car drove up and two of the youths jumped out and snatched her purse.

About 8:20 p.m. on November 19, 1976, Donald Smith was shot at 14th and Taraval Streets and subsequently died of the gunshot wound. Around 10 p.m. on November 20, 1976, Mr. and Mrs. Golden were walking their poodle near Clay and Maple Streets. Two black youths approached them and demanded money. Mr. Golden hesitated and one of the boys said "Hand it over or I'll shoot you." Mr. Golden replied "Go ahead and shoot me." The youth shot him twice. Both youths fled. Mr. Golden died from the gunshot wound.

None of the surviving victims were able to make a positive identification of defendant as one of the assailants.

lost all of his support systems and was susceptible to suggestion. Dr. Levenson opined that defendant was not capable of making a mature, rational judgment concerning his rights on January 5, the day of his arrest and confession. With the apparent acquiescence of defendant's counsel, the court did not listen to the tapes prior to ruling on their admissibility.

During the juvenile proceedings, defendant denied any involvement in any of the murders or robberies, but admitted the accidental shooting of Austin on January 3, 1977. Defendant also presented alibi evidence as to the murders.

The tapes, which were played at the hearing, indicated that defendant was again given his *Miranda* warnings and indicated that he understood them and wanted to talk. He then confessed to the murder and robbery of Donald Smith on November 19, 1976, to the murder and attempted robbery of Edwin Golden on November 20, 1976, to the attempted robbery of Jerome Dougherty and Patrice Cochran on September 26, 1976, to the robbery of Joseph DelValle, Richard D. May and Truman Conner around midnight on November 12, 1976, to the robbery of Arthur and Lillian Toupin around 7:15 p.m. November 12, 1976, and to the robbery of Colleen McKay on November 17, 1976. Defendant could not recall all of the details of each of the above incidents, such as which victims were alone or accompanied by others. Cleary and Falzon refreshed defendant's memory with leading questions and defendant corrected the details that he had previously described inaccurately. However, defendant admitted being present at each of the incidents with one or the other of his friends and his participation. He also indicated that he might have been involved in other incidents, as he had been "pulling street robberies" since he was 13 years old.[3]

Although Falzon was in the hall at the juvenile hearing, he was not called to rebut defendant's accusations of threats and implied promises of leniency or reward.

We turn first to defendant's contention that his confession was invalid as it was obtained without an intelligent, knowledgeable and voluntary waiver of his constitutional rights, and was the result of coercive tactics.

[3]At the conclusion of the 3½ hour interrogation, which included 45-50 minutes taped, defendant was taken home to his stepfather, who was then informed for the first time that defendant was a suspect in, and had confessed to, the charged homicides and robberies.

■ Both the United States Supreme Court and the California Supreme Court have held that the use in a juvenile proceeding of a confession obtained without an intelligent, knowledgeable and voluntary waiver of constitutional rights violates the Fifth Amendment and the due process clause of the Fourteenth Amendment of the United States Constitution (*In re Gault,* 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]; *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *Malloy* v. *Hogan,* 378 U.S. 1 [12 L.Ed.2d 653, 84 S.Ct. 1489]; *Payne* v. *Arkansas,* 356 U.S. 560 [2 L.Ed.2d 975, 78 S.Ct. 844]; *People* v. *McClary,* 20 Cal.3d 218 [142 Cal.Rptr. 163, 571 P.2d 620]; *People* v. *Haydel,* 12 Cal.3d 190, 197 [115 Cal.Rptr. 394, 524 P.2d 866]). Admission of such a confession requires reversal (*People* v. *Spencer,* 66 Cal.2d 158, 163 [57 Cal.Rptr. 163, 424 P.2d 715]; *People* v. *Matteson,* 61 Cal.2d 466, 469 [39 Cal.Rptr. 1, 393 P.2d 161]; *People* v. *Ditson,* 57 Cal.2d 415, 439 [20 Cal.Rptr. 165, 369 P.2d 714]). A reading of the *Miranda* rights is not enough to satisfy the requirements of due process. To be admissible, the confession must be a product of a rational intellect and a free will (*Townsend* v. *Sain,* 372 U.S. 293, 307 [9 L.Ed.2d 770, 782, 83 S.Ct. 745]; *In re Walker,* 10 Cal.3d 764, 776 [112 Cal.Rptr. 177, 518 P.2d 1129]; *People* v. *Berve,* 51 Cal.2d 286, 291 [332 P.2d 97]). The appellate court must make an independent determination, based on the undisputed facts and the totality of the circumstances, as to whether the confession was a product of a rational intellect and a free will (*Stroble* v. *California,* 343 U.S. 181, 190 [96 L.Ed. 872, 880-881, 72 S.Ct. 599]; *People* v. *Sanchez,* 70 Cal.2d 562, 572 [75 Cal.Rptr. 642, 451 P.2d 74]; *In re Linda D.,* 3 Cal.App.3d 567, 573 [83 Cal.Rptr. 544]). There is no presumption of a waiver of one's constitutional rights. The waiver must affirmatively appear on the record (*In re Steven C.,* 9 Cal.App.3d 255, 267 [88 Cal.Rptr. 97]). In addition, special care in scrutinizing the record must be used when dealing with a 15-year-old juvenile, who cannot be assumed either to fully appreciate his rights without the aid of counsel, or to have any conception of what will confront him when he is made accessible only to the police (*Gallegos* v. *Colorado,* 370 U.S. 49, 54 [8 L.Ed.2d 325, 328-329, 82 S.Ct. 1209, 87 A.L.R.2d 614]; *Haley* v. *Ohio,* 332 U.S. 596, 599-601 [92 L.Ed. 224, 228-229, 68 S.Ct. 302]; cf. *In re Michael C.,* 21 Cal.3d 471, 474 [146 Cal.Rptr. 358, 579 P.2d 7]).

The above rules were reiterated by our Supreme Court in *People* v. *Jimenez, supra,* 21 Cal.3d 595, decided on June 29, 1978, after all of the briefs in the instant case had been filed. In *Jimenez,* at pages 603-607, our Supreme Court held that as a judicially declared rule of criminal

procedure, in this state, the People have the burden of proving the voluntariness of a confession beyond a reasonable doubt. The *Jimenez* rule was expressly made retroactive to all cases then on appeal (at p. 608) and further held at page 609: ". . . we do not think it can be presumed that the trial court applied the correct standard in those cases in which the record is silent," but that since the voluntariness of a confession related only to a preliminary fact, the effect of any such error was to be measured by the standard of *People* v. *Watson,* 46 Cal.2d 818, 837 [299 P.2d 243]. In *Jimenez, supra,* the court did not find it necessary to apply the *Watson* rule to the trial court's preliminary finding of voluntariness as, in making its own independent examination of the record, it was able to determine as a matter of law that defendant's statement was not voluntary because there was no contradiction of the promise of leniency made. Likewise, in *In re Michael C., supra,* 21 Cal.3d, page 474, *People* v. *McClary, supra,* 20 Cal.3d 218, and *People* v. *Burton,* 6 Cal.3d 375, 382 [99 Cal.Rptr. 1, 491 P.2d 793], the court had a record documenting the conduct by the minor which per se invoked the privilege against self-incrimination.

On the basis of the record before us, we can make no determination as to the voluntariness or involuntariness of the confession as a matter of law. The record here is fraught with conflicting testimony and ambiguities. The minor was 15 years old and had no experience with law enforcement officials prior to his arrest. Defendant's psychiatrist testified that at the time of his arrest and confession, the minor was functioning below his age level and was susceptible to suggestion. The trial judge who heard this witness did not find his testimony compelling. The court in making its preliminary determination of voluntariness, apparently concluded that the demeanor of defendant and the testimony of the homicide officers who questioned him, refuted the psychiatric testimony. Defendant testified that the police reports were read and the threats and offers were made by Falzon after Cleary left the room. Although Falzon was not called to testify, Cleary contradicted defendant by testifying that he was not absent from the room sufficiently long for this to have occurred. Furthermore, the record shows that even before Cleary left the room to obtain the tape recorder, defendant had been advised of his rights and had agreed to talk to the officers about the murders. The trial court did not listen to the tapes prior to making its preliminary determination. None of the above factors, in and of itself, is determinative; all comprise the "totality of circumstances" on the basis of which the factual determination as to voluntariness and waiver must be made (*In re Dennis M.,* 70 Cal.2d 444, 463 [75 Cal.Rptr. 1, 450 P.2d 296]).

The trial court here did not have the benefit of *Jimenez, supra,* 21 Cal.3d 595, and cannot be presumed to have applied the retroactively required *"beyond a reasonable doubt"* standard. Furthermore, looking at the total record of the voluntariness hearing, we can only conclude that there is a reasonable probability that a result more favorable to defendant could have been reached on the application of the proper "beyond a reasonable doubt" standard. Accordingly, on the authority of *Jimenez, supra,* we must reverse for a redetermination of the issue of voluntariness and waiver.

We conclude that a new hearing is advisable to resolve the obvious ambiguities and uncertainties inherent in the previous hearing. Falzon should be called. More expert testimony concerning the minor's mental and physical condition is indicated (*In re Dennis M., supra,* 70 Cal.2d 444). Such additional evidence would clarify the total situation and greatly assist both the trial court and the subsequent reviewing court in determining whether or not the People have met their burden of proving voluntariness *beyond a reasonable doubt.*

In view of our conclusion that the instant matter must be reversed for a redetermination of the preliminary fact of the voluntariness of defendant's confession, the remaining issues on appeal are discussed summarily.

■ Defendant also contends that his confession was inadmissible because it was the product of an illegal detention since he was not taken to a probation officer immediately after his arrest, as required by Welfare and Institutions Code section 626, set forth below, so far as pertinent.[4] This contention is entirely without merit. Section 626 refers to arrest and detention made pursuant to section 625, which pertains to the arrest of a minor for minor offenses. The record, however, indicates that defendant was arrested pursuant to section 625.1, subdivision (c), commission of a felony. Welfare and Institutions Code section 625.1 was enacted in 1971 (Stats. 1971, ch. 1415, § 1) and specifically deals with more serious

[4]"An officer who takes a minor into temporary custody under the provisions of Section 625 shall thereafter proceed as follows: . . .

"(c) He may take such minor without unnecessary delay before the probation officer of the county in which such person was taken into custody, or in which such person resides, or in which the acts take place or the circumstances exist which are alleged to bring the minor within the provisions of Section 601 or 602, and deliver the custody of such minor to the probation officer.

"In determining which disposition of the minor he will make, the officer shall prefer the alternative which least restricts the minor's freedom of movement, provided such alternative is compatible with the best interests of the minor and the community."

offenses than section 625. Even assuming a conflict between section 626, which requires that a minor be promptly taken to his probation officer, and section 625.1, which contains no such requirement, section 625.1, the later and more specific enactment, controls (cf. *In re Thierry S.,* 19 Cal.3d 727 [139 Cal.Rptr. 708, 566 P.2d 610]). We also note that section 626 was recently amended (Stats. 1976, ch. 1068, § 26) and retained its limitation to arrests made pursuant to Welfare and Institutions Code section 625. Thus, the only reasonable inference is that the Legislature did not extend the probation officer requirement of section 626 to arrests made pursuant to Welfare and Institutions Code section 625.1. As the officers were not required to take defendant to a probation officer without unnecessary delay, there was no violation of Welfare and Institutions Code section 626. We note that the record indicates that the section 602 petition was filed the day following his arrest and, thus, was filed within the 48-hour time period required by Welfare and Institutions Code section 631, subdivision (a).

Recently, our Supreme Court reiterated that pursuant to the similar 48-hour provision of Penal Code section 825, a detention of less than two days if unreasonable under the circumstances, may violate the statute (*People* v. *Pettingill,* 21 Cal.3d 231, 243 [145 Cal.Rptr. 861, 578 P.2d 108]). The 48-hour time period of Welfare and Institutions Code section 631 must be construed in the same manner. We do not think that the 24-hour delay between defendant's arrest and the arraignment was unreasonable under the circumstances. Even assuming so, we note that in *Pettingill, supra,* at page 244, our Supreme Court again stated that the federal rule of *McNabb* v. *United States,* 318 U.S. 332 [87 L.Ed. 819, 63 S.Ct. 608], that any confession obtained during an illegal detention is ipso facto inadmissible, has not been adopted in this state.

The question of the existence of sufficient substantial evidence to support the juvenile court's finding need not be reached here, as it hinges on the voluntariness and admissibility of defendant's confession.

■ Defendant's contentions that he was deprived of his right to a jury trial pursuant to the Sixth Amendment and due process and equal protection clauses of the United States Constitution were recently rejected by both the United States Supreme Court and the California Supreme Court. In *McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976], the United States Supreme Court noted at page 545 [29 L.Ed.2d at page 661]: ". . . trial by jury in the juvenile court's adjudicative stage is not a constitional requirement." Subsequently, our

Supreme Court in *People* v. *Superior Court (Carl W.)* 15 Cal.3d 271 [124 Cal.Rptr. 47, 539 P.2d 807], stated at page 274: ". . . neither the state nor the federal Constitution guarantees a jury trial in a juvenile proceeding." (See also, *In re Clarence B.,* 37 Cal.App.3d 676, 679 [112 Cal.Rptr. 474].) We are aware of the criticism of these views and the opinion by some scholars in favor of jury trials in certain juvenile cases.[5] We are, however, bound by the decisions of the higher courts (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937]; *People* v. *Rincon-Pineda,* 14 Cal.3d 864, 872 [123 Cal.Rptr. 119, 538 P.2d 247]). Accordingly, we conclude that in this state a jury is not constitutionally required in juvenile proceedings. As to defendant's alternative contention that a juvenile should be afforded the right to a jury trial on request, *People* v. *Superior Court (Carl W.), supra,* at page 281 et seq., held that the broad provisions of Welfare and Institutions Code section 680 included a discretionary power only on the part of the juvenile court to empower an advisory jury. Our Supreme Court, at page 282, noted that our Legislature was then considering measures relating to juvenile trials in certain juvenile cases. We note, however, that the Legislature's recent extensive amendments of the Juvenile Court Law (Stats. 1976, ch. 1068) did not include a right to a jury trial.

The judgment is reversed with directions to proceed in accordance with this opinion.

Kane, J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 3, 1979.

---

[5]See *People* v. *Superior Court (Carl W.), supra,* footnote 15, at page 282.