[Civ. No. 11825. Fourth Dist., Div. Two. Feb. 9, 1972.]

STEVEN WILLIAM BATTS, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Frank L. Williams, Jr., Public Defender, James R. Goff and David W. Duncan, Deputy Public Defenders, for Petitioner.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, and Oretta D. Sears, Deputy District Attorney, for Respondent and Real Party in Interest.

## OPINION

**GARDNER, P. J.**—Petitioner was charged with possession of marijuana and restricted dangerous drugs. A motion for dismissal under the provisions of section 995 of the Penal Code was denied and the petitioner filed a petition for writ of prohibition.

At 9:30 p.m. on April 9, 1971, Officer Jacobs of the Newport Beach Police Department saw a Volkswagen van parked in a public parking lot. As he walked past the van, he observed that the rear portion behind the front seat was entirely closed off by window curtains. However, he could see lights inside and could hear voices. He observed the front curtain on the right side of the vehicle pulled back and an individual look out at him and then quickly replace the curtain. He knocked on the right front window of the vehicle, identified himself as a police officer, and stated that he wished to talk to the individuals inside. Approximately 15 seconds later, a juvenile opened the window and as he did so, the officer smelled a strong odor of burnt marijuana coming from inside the vehicle. The officer asked the persons inside to come out and as they did so, he observed a small brass pipe and some marijuana fragments. A search of the vehicle revealed hashish. At the station, hashish and LSD were recovered from the person of the petitioner.

Officer Jacobs testified that the City of Newport Beach has an ordinance which makes it unlawful for any person to sleep in an automobile parked in any place in the City of Newport Beach or to sleep on the beach between the hours of 9 p.m. and 9 a.m.

Petitioner contends that when the officer knocked on the window of the van, he detained the individuals inside, and that since the officer was not aware of sufficient facts to make a detention legal, that the evidence which resulted from the knocking on the window of the van must be excluded.

In *People* v. *Manis*, 268 Cal.App.2d 653 [74 Cal.Rptr. 423], and *People* v. *Henze*, 253 Cal.App.2d 986 [61 Cal.Rptr. 545], Mr. Justice Macklin Fleming made a classic contribution to the administration of criminal justice. In these two cases, he traced with vivid clarity the escalating scale of police activity permissible in the field of questioning, detention and arrest when these activities arise from suspicious actions on the part of the citizen. Mr. Justice Fleming apparently did not think it was necessary to point out that there are many contacts between police and citizen which are in no way related to crime but from which evidence of crime may result. However, the importance of drawing a distinction be-

tween these contacts and "detentions" is now clear. This case is another in a long series of cases presented to this court in which defense counsel equate every contact between police and citizen as a "detention" and thus demand that the police establish a *Henze* foundation[1] before they can carry on any conversation with the citizen.

Innumerable contacts between police and citizens are intrusions into the citizen's privacy but these contacts have nothing to do with suspicion of criminal activity. They arise from the police officer's duty to maintain peace and security, to protect citizens from harm or annoyance and to do all those innumerable miscellaneous tasks which society calls upon the police to do which have nothing to do with the detection of crime. For example:

(1) A police officer knocks on a door to borrow a ladder to get a neighbor's cat out of a tree, and when someone comes to the door, the officer observes evidence of crime within the house.

(2) A police officer awakens a citizen to deliver a message of a death in the family (a common responsibility for police officers) and when the citizen comes to the door, the officer observes evidence of crime.

(3) A police officer stops a young man from throwing a frisbee or a football on a crowded beach or in a crowded park and notices the young man has the symptoms of being under the influence of a narcotic. A search after arrest reveals contraband.

(4) A police officer stops a pedestrian to warn him about proceeding into a neighborhood where muggings are frequent and notices he has the symptoms of one under the influence of a narcotic. A search after arrest reveals contraband.

(5) A police officer gets an irate dog-lover out of bed at midnight to ask him to quiet his pet, whose barking has caused the neighbors to complain, and sees in plain sight some evidence of crime.

(6) A police officer stops a motorist to warn him of adverse weather or road conditions ahead and notices in the vehicle evidence of crime.

All of the above examples represent intrusions into the lives of citizens. In none of them were there suspicious activities related to crime on the part of the citizens. Yet, each led to the discovery of evidence of crime.

---

[1]Before a police officer may "detain" there must be a rational suspicion that some activity out of the ordinary is taking place, something to connect the person under suspicion with the unusual activity and some suspicion that the activity is related to crime. (*People* v. *Henze, supra,* 253 Cal.App.2d 986, 988.)

Were the courts to apply the *Henze* rule to each of these cases, the evidence uncovered would be excluded as illegally obtained. However, there are many intrusions into the privacy of citizen's lives by police officers which are completely reasonable and permissible and have nothing to do with the detection of crime.[2] Those contacts between police officers and citizens are not "detentions" in any sense which requires them to be tested by *Henze* standards.

Obviously, a police officer must have a reason for any contact with a citizen other than a casual greeting. A police officer may not use the authority of his uniform and badge to go around promiscuously bothering citizens. But as long as his conduct is reasonably consistent with his overall duties of protecting life and property and aiding the public in maintaining lives of relative serenity and tranquillity, his contact is not necessarily a "detention" in the *Henze* sense.

Such is the instant case. This incident took place during Easter vacation when thousands of young people descend upon the City of Newport Beach to celebrate Bal Week. In the efforts of the police to maintain a semblance of order, many everyday contacts between them and the visitors are necessary; only some of these take on the characteristics of a "detention." One of the tools the city uses in maintaining some semblance of control is the ordinance which provides that no one may sleep in an automobile or on the beach between the hours of 9 p.m. and 9 a.m. When Officer Jacobs saw the van drawn curtains, parked in a public parking lot at 9:30 p.m., he had reason to believe that even if the occupants were not asleep at that time, they did intend to remain in the parking lot and sleep. Accordingly, he had the duty of notifying the occupants that an ordinance prohibited their doing so. From the contact here, contraband was discovered when the people inside, in answer to his knock, opened the window of the van and the smell of marijuana gave him probable cause to believe that the occupants had been smoking marijuana. The knocking on the window by the officer was reasonable behavior and not a detention in the *Henze* sense of the word. (See *People* v. *Blackmon*, 276 Cal.App.2d 346, 348 [80 Cal.Rptr. 862].) Calling this type of behavior "detention" tortures logic and reason. The contraband eventually obtained was not obtained as the result of any illegal activity on the part of Officer Jacobs.

---

[2]Another type of intrusion into the privacy of the individual by the police which does involve crime but does not involve any suspicious activity on the part of the individual arises from the questioning of witnesses to a crime. No one would deny the right of the police to question witnesses to a crime yet the *Henze* foundation is entirely lacking. If during this entirely proper questioning officers become aware of proof of another crime, they may avail themselves of it.

Petitioner's contention that this court and the trial court are bound by the determination of the magistrate that there had been a detention is without merit. In the first place, we do not read the record to indicate the magistrate made any such determination; and if he did, because it is not a factual finding, it is in no way binding on either the trial court or this court. The case of *Jones* v. *Superior Court,* 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241], is not to the contrary.

The trial court said, "I do not think it is a detention." We agree.

Petition denied.

Kerrigan, J., and Tamura, J., concurred.

A petition for a rehearing was denied February 28, 1972, and petitioner's application for a hearing by the Supreme Court was denied April 6, 1972.