[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 297 
OPINION
The minor (age 14) appeals from order sustaining petition which alleged that he came within the provisions of section 602, Welfare and Institutions Code in that he willfully threw a missile at a vehicle and its occupants on a highway with intent to do great bodily harm (§ 23110, subd. (b), Veh. Code), but was sustained on a finding of a violation of section 23110, subdivision (a), a lesser and included offense deemed to be a misdemeanor; and declaring him a ward of the court.
Robert Jacoby, private security guard for Ridgegate Condominiums saw the minor walk across the shuffleboard court to the north wall, then to the flower bed, pick up a rock and throw it into the east (fast) lane of Hawthorne Boulevard; the rock came within seven or eight feet of a moving car; as he started to walk toward him, he saw the minor pick up another rock and throw it over the wall hitting the right back fender of a Ford Granada. Jacoby detained the minor whose custody was later taken by Deputy Finch.
Appellant contends his arrest for a misdemeanor was unlawful under section 625.1, Welfare and Institutions Code, and In reThierry S., 19 Cal.3d 727 [139 Cal.Rptr. 708, 566 P.2d 610], thus his subsequent confession was inadmissible. In Thierry S.
a citizen observed two boys standing near a broken window of a schoolroom which apparently had been vandalized shortly before, and although he had not observed them do anything, he detained them and called a deputy who arrested them for vandalism (pp. 732-733). The court held the arrest was governed by section625.1 and, because the minor was arrested without a warrant by an officer for a misdemeanor not committed in his presence, the arrest was invalid (p. 745). The court rejected the theory that the custody of the *Page 298 
boys was a citizen's arrest to which the deputy simply provided assistance (§§ 837, 839, Pen. Code), because it was not urged in the trial court and further, the deputy testified that he and no one else placed the boys under arrest. (P. 733, fn. 3.) We also note that the offense had not been committed in the presence of the citizen.
(1) Here the offense was committed in the presence of Jacoby, a private security guard for Shoreline Patrol. The evidence established that initially Jacoby arrested the minor; and the trial court found that Jacoby made a citizen's arrest and relied on that theory in upholding the subsequent transfer of the minor's custody to Deputy Finch. A private person may arrest for a misdemeanor if it is committed or attempted in his presence (§ 837, subd. 1, Pen. Code; People v. Lacey, 30 Cal.App.3d 170, 175 [105 Cal.Rptr. 72]; People v. Campbell, 27 Cal.App.3d 849, 853-854 [104 Cal.Rptr. 118]), and the arrest is a valid one and continues even though he transfers custody of the accused to a peace officer (People v. Campbell, supra, 27 Cal.App.3d 849, 853-854; People v. Harris, 256 Cal.App.2d 455, 459-460 [63 Cal.Rptr. 849].)
(2a) Appellant's contention that his confession was inadmissible is predicated on his request at the time he was booked to call his parents which he asserts constituted an invocation of his privilege against self-incrimination. On the authority of People v. Pettingill, 21 Cal.3d 231
[145 Cal.Rptr. 861, 578 P.2d 108], In re Michael C., 21 Cal.3d 471
[146 Cal.Rptr. 358, 579 P.2d 7], and People v. Burton, 6 Cal.3d 375
[99 Cal.Rptr. 1, 491 P.2d 793], we hold that after the request was made all subsequent questioning should have ceased, and that the confession was obtained in violation of the rules articulated in Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] and its admission into evidence constituted reversible error.
The minor was arrested by Jacoby on the evening of June 23; shortly thereafter, Deputy Finch took custody, advised the minor of his Miranda rights and transported him to the juvenile facility at Lomita station. When the minor was booked he was told he had a right to call his parents and his attorney, and he then (9:30 or 10 p.m.) asked the jailor to make a telephone call to his parents; an officer placed the call but was informed that the minor's parents would not be home until midnight; nevertheless the minor wanted the officer to call them and asked to be let out to call that night when he knew they would be home; meanwhile the minor fell asleep around 11 p.m. The officers made no further attempt to communicate with the minor's parents and they did not awaken the minor to make *Page 299 
the call. The next morning around 7:30 Sergeant Slocumb had a conversation with the minor; he told him he would not have to talk about anything; the minor asked him whether, if he told him everything, he would have to go to court, and he replied it would be up to the probation department; he then read to him hisMiranda rights explaining each right; the minor said he understood his rights and wished to speak without the presence of an attorney then, asked if he had thrown rocks on Hawthorne Boulevard, the minor said he had. After the confession Sergeant Slocumb called the minor's parents; he testified he had not known that the minor requested to call his parents the evening before.
(3) Before any questioning begins the police must give the suspect four warnings advising him primarily of his right to remain silent and to have the assistance of counsel. The questioning must terminate if the suspect directly or indirectly invokes any of these rights. (Miranda v. Arizona (1966)384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. [Fn. omitted.] At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." (Pp. 473-474 [16 L.Ed.2d p. 723].)
In a long line of cases the California Supreme Court has held that once a suspect has indicated directly or indirectly that he does not wish to waive his privilege against self-incrimination, the police cannot lawfully continue or renew the interrogation, even though he is again given his Miranda warnings prior to the new or subsequent interrogation, and any statement elicited thereafter is inadmissible because in violation of the principles of Miranda and the privilege against self-incrimination of the California Constitution. (People v. Pettingill, 21 Cal.3d 231, 238, 243 [145 Cal.Rptr. 861, 578 P.2d 108]; People v.McClary, 20 Cal.3d 218, 226 [142 Cal.Rptr. 163, 571 P.2d 620];People v. Enriquez, 19 Cal.3d 221, 237-238 [137 Cal.Rptr. 171,561 P.2d 261]; People v. Disbrow, 16 Cal.3d 101, 104-106 [127 Cal.Rptr. 360, 545 P.2d 272]; People v. Superior Court(Zolnay), 15 Cal.3d 729, 735-737 [125 Cal.Rptr. 798,542 P.2d 1390]; People v. Superior Court (Keithely) 13 Cal.3d 406, 412 [118 Cal.Rptr. 617, 530 P.2d 585]; People v. Carr, 8 Cal.3d 287, 297 [104 Cal.Rptr. 705, 502 P.2d 513]; People v.Burton, 6 Cal.3d 375, 384 [99 Cal.Rptr. 1, 491 P.2d 793];People v. Randall, 1 Cal.3d 948, 955-958 [83 Cal.Rptr. 658,464 P.2d 114]; People v. Ireland, 70 Cal.2d 522, 535-536 [75 Cal.Rptr. 188, *Page 300 450 P.2d 580, 40 A.L.R.3d 1324]; People v. Fioritto, 68 Cal.2d 714, 719 [68 Cal.Rptr. 817, 441 P.2d 625].)
(2b) Thus the question here is whether the juvenile's request to call his parents is deemed an invocation of his privilege against self-incrimination; if the answer is in the affirmative any subsequent interrogation was unlawful and the confession inadmissible. Dispositive of this issue are In re Michael C.,21 Cal.3d 471 [146 Cal.Rptr. 358, 579 P.2d 7], which held by analogy to People v. Burton, 6 Cal.3d 375 [99 Cal.Rptr. 1,491 P.2d 793] ". . . that the minor's request for his probation officer — essentially a `call for help' — indicated that the minor intended to assert his Fifth Amendment privilege" (p. 476), and People v. Burton, supra, 6 Cal.3d 357 which held that a minor's request to see his father invoked his Fifth Amendment privilege. Said the court at page 382: "It would certainly severely restrict the `protective devices' required by Miranda
in cases where the suspects are minors if the only call for help which is to be deemed an invocation of the privilege is the call for an attorney. It is fatuous to assume that a minor in custody will be in a position to call an attorney for assistance and it is unrealistic to attribute no significance to his call for help from the only person to whom he normally looks — a parent or guardian. It is common knowledge that this is the normal reaction of a youthful suspect who finds himself in trouble with the law."
The court in Burton concluded at pages 383-384: "Accordingly we hold that when, as in the instant case, a minor is taken into custody and is subjected to interrogation, without the presence of an attorney, his request to see one of his parents, made at any time prior to or during questioning, must, in the absence of evidence demanding a contrary conclusion, be construed to indicate that the minor suspect desires to invoke his Fifth Amendment privilege." Thus, inasmuch as the People contend that the request to call his parents should not be considered an invocation by the minor of his privilege against self-incrimination, they must affirmatively demonstrate that such request ". . . is not an indication of that minor's unwillingness to continue talking with police or of a desire for help in how to conduct himself with police. . . ." (People v. Burton,6 Cal.3d 375, 383 [99 Cal.Rptr. 1, 491 P.2d 793]; In re MichaelC., 21 Cal.3d 471, 478 [146 Cal.Rptr. 358, 579 P.2d 7];People v. Randall, 1 Cal.3d 948, 957 [83 Cal.Rptr. 658,464 P.2d 114].) In support of such showing the People submit that the circumstances of the minor's request and the fact it was not made in custodial interrogation, the fact the questioning resulting in the confession took place the next morning, the *Page 301 
meticulous explanation of his rights by Sergeant Slocumb and the minor's apparent willingness to discuss the matter with him, bespeak the minor's lack of intention to invoke his Fifth Amendment privilege when he made the request. The People have no better met the burden of affirmatively demonstrating that the minor's request was no indication of his unwillingness to talk to police or desire for help in how to conduct himself and thus not a manifestation of the minor's intention to assert his privilege, than they met their burden in People v. Burton, 6 Cal.3d 375
[99 Cal.Rptr. 1, 491 P.2d 793]. Similarly in Burton, at the time he was booked, the juvenile asked to see his father who at that time had arrived at the station; the request was denied. Thereafter police carefully explained to him his Miranda
rights, he said he understood them and waived these rights. The fact that in the instant case the request was made at a time he was not being subjected to interrogation, and the subsequent confession was preceded by Miranda warnings and a knowing and intelligent waiver of those rights, is no solace to respondent (People v. Burton, supra, 6 Cal.3d 375, 384), nor is the fact that the interrogation producing the confession did not immediately follow the minor's request to call his parents. (People v. Pettingill, 21 Cal.3d 231, 242 [145 Cal.Rptr. 861,578 P.2d 108] [61 hours later].) We note in this connection that the minor had been in his cell at Lomita station from about 9:30 p.m. on June 23 to at least 7:30 a.m. on June 24, and his custody had not been delivered to the probation officer as required under section 626, Welfare and Institutions Code. (Cf. People v. Pettingill, supra, 21 Cal.3d 231, 242-243.)
On the basis of Michigan v. Mosley (1975) 423 U.S. 96, 102-103 [46 L.Ed.2d 313, 320-321, 96 S.Ct. 321], the People argue that Miranda does not create per se proscription of any further interrogation once the person being questioned has indicated a desire to remain silent. Using the test laid down in Mosley
they submit that the minor's "`right to cut off questioning'" was "`scrupulously honored'" by police. However, the California Supreme Court in People v. Pettingill, 21 Cal.3d 231
[145 Cal.Rptr. 861, 578 P.2d 108] has held that the California Constitution imposes a stricter standard than required byMosley when police seek to interrogate a suspect who has previously refused to waive his Miranda rights and ". . . theFioritto rule, rather than the Mosley test, will remain the rule of decision in all state prosecutions in California." (P. 251.)
Because police conducted an interrogation the morning following the minor's exercise of his Fifth Amendment privilege, the confession obtained by the subsequent questioning was inadmissible. (4) The admission of such confession was prejudicial per se and compels reversal *Page 302 
of the order. (In re Michael C., 21 Cal.3d 471, 478 [146 Cal.Rptr. 358, 579 P.2d 7]; People v. Burton, 6 Cal.3d 375, 384 [99 Cal.Rptr. 1, 491 P.2d 793].)
The order is reversed.
Thompson, J., concurred.