[Crim. No. 48026. First Dist., Div. One. Dec. 1, 1980.]

In re GREGORY S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
GREGORY S., Defendant and Appellant.

**COUNSEL**

David N. Bortin, John A. Meaden III and Walsh, Morton, Meaden & Ajlouny for Defendant and Appellant.

Marshall W. Krause, Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Franklin D. Elia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

AGLIANO, J.*—The Contra Costa County Juvenile Court found that appellant, a minor 15 years of age, resisted, delayed and obstructed Deputy Sheriff R. Flores in the discharge and attempted discharge of a duty of his office. (Pen. Code, § 148.) The minor was thus found to come within the provisions of section 602 of the Welfare and Institutions Code and declared a ward of the juvenile court.

This appeal questions (1) the legal sufficiency of the evidence to support the decision of the court, and (2) the propriety of the court's rulings on the admissibility of certain evidence.

The American Civil Liberties Union has filed a brief as amicus curiae in support of appellant.

*Facts*

The testimony was in conflict. However, by viewing the evidence, resolving conflicts and drawing reasonable inferences in the light most favorable to respondent as required (*People* v. *Archerd* (1970) 3 Cal.3d 615, 621 [91 Cal.Rptr. 397, 477 P.2d 421]), we find the trial court's decision supported by the following substantial evidence.

On February 14, 1979, at 1:45 p.m., Deputy Sheriff Flores, on routine patrol, went to the Orinda residence of Mrs. Ahlstrom to investigate her complaint of "malicious mischief." She told Flores someone had pounded on her front door while she was seated at the rear deck of her house. She responded but found no one there. Returning to the deck via the side yard she saw the blond neighbor boy (appellant) hiding behind a stack of bricks near her property line. On being spotted he ran toward his house next door. She returned to the deck when, shortly, a ball of mud was thrown in her direction landing five feet away. She assumed appellant had thrown it. Flores told Mrs. Ahlstrom he would investigate.

The officer had had prior experience with Mrs. Ahlstrom and appellant's family. Neighbors had complained of noise made by appellant and his brother riding minibikes. Appellant's father, in the minor's presence, was hostile when Officer Flores related the complaint to him.

---

*Assigned by the Chairperson of the Judicial Council.

Another time appellant's parents complained that Mrs. Ahlstrom was harrassing appellant and his brother. Flores spoke with Mrs. Ahlstrom about the complaint, and, as a result of this and a prior experience with her, he suspected she had a mental problem.

Flores thus approached his present task with trepidation. Although he believed an assault had occurred, he did not then intend to arrest appellant. He first decided to telephone appellant's parents in order to avoid a hostile confrontation. However, while on the street near his patrol car, he saw appellant with his brother in their front yard and decided to contact him then. When appellant saw the officer he started to walk around the side of the house. Flores called out twice, "Hey you. Come here." Appellant ignored him and kept walking. The officer walked about 20 feet down the driveway to appellant's brother and asked where appellant had gone. The brother said he did not know.

Appellant appeared and told the officer to get off the property, adding, "This is private property." The officer informed appellant that he was investigating a complaint by the neighbor and had a legal right to be there. He told appellant he wanted to talk to him; he wanted to know his name.[1] Flores' purpose at this point was to identify appellant as a suspect and to obtain his full name and date of birth.

Appellant responded that he did not have to talk to the officer and began to leave. The officer took appellant by the arm, whereupon appellant struggled and attempted to pull away. The officer advised appellant that he was under arrest for delaying and obstructing a public officer in the discharge of his duty. The struggle intensified and appellant started to swing at the officer. Appellant's mother had by then come out of the house, and she, together with appellant's younger brother, became involved in the struggle.

The primary issue is whether the evidence is legally sufficient to support the juvenile court's decision.

Section 148 of the Penal Code provides in part: "Every person who wilfully resists, delays, or obstructs any public officer, in the discharge or attempt to discharge any duty of his office, . . . is punishable by a fine . . . or by imprisonment in a county jail. . . ."

---

[1]Deputy Flores knew appellant only by his surname. Although the record is not precise as to what words the officer used in addressing appellant, it may reasonably be concluded he stated both that he wanted to talk to him and to know his name.

■ It is settled that no violation of Penal Code section 148 can result when the public officer is performing an activity which is not lawful, since an officer does not discharge a duty of his office when he engages in unlawful conduct. (*People* v. *Curtis* (1969) 70 Cal.2d 347, 352-356 [74 Cal.Rptr. 713, 450 P.2d 33].) Whether Officer Flores was engaged in the discharge of a duty of his office, requires scrutiny of his conduct.

*Did the Officer Lawfully Detain Appellant?*

■ Appellant first contends that the officer had no lawful basis on which to restrain or attempt to restrain his freedom of movement.

Officer Flores received information from a citizen that she had been harrassed and assaulted. The circumstances reasonably supported his belief that the minor was responsible. The officer observed the object which had been thrown, the complaint was patently credible despite the officer's prior experience with Mrs. Ahlstrom, and the minor departed on seeing the officer.

■ "A peace officer may, without a warrant, take into temporary custody a minor: [¶] (a) Who is under the age of 18 years when such officer has reasonable cause for believing that such minor is a person described in Section...602." (Welf. & Inst. Code, § 625.) This provision eliminates, in the case of a juvenile, the otherwise applicable requirement (Pen. Code, § 836) that a misdemeanor be committed in the officer's presence before an arrest may be made without a warrant.[2]

■ Apart from his arguable, though unexercised, right to arrest appellant, the officer also had the right to take the less intrusive measure of temporary detention for investigation. The officer possessed specific and articulable facts causing him to suspect that (1) some activity relating to crime had taken place or was occurring or about to occur, and (2) the person he intended to stop or detain was involved in that activity. (*In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].)

---

[2]*In re Thierry S.* (1977) 19 Cal.3d 727 [139 Cal.Rptr. 708, 566 P.2d 610], which mandated an "in the presence of the arresting officer" requirement for warrantless misdemeanor arrests of juveniles, no longer seems controlling since Welfare and Institutions Code section 625.1, on which the holding relied, was repealed in 1978.

Appellant does not seriously dispute that Officer Flores had information which, when measured objectively, justified detention. He contends, however, that Flores did not subjectively believe the facts warranted such action because he initially planned to handle the problem by phone. This contention is refuted by Flores' testimony that he believed he had cause to investigate, but he considered phoning only because he expected hostility were he to confront appellant's parents in person.

■ Appellant also argues that because the officer was dealing with a minor on his own property he was required to contact the parents rather than the minor. There was no such requirement here. ■ *Custodial* interrogation of a minor is improper following his unhonored request to see his parents (*People* v. *Burton* (1971) 6 Cal.3d 375, 383-384 [99 Cal.Rptr. 1, 491 P.2d 793]; *In re Roland K.* (1978) 82 Cal.App.3d 295 [147 Cal.Rptr. 96]); and, even absent a request, if parents are available and wish to speak to a minor in *custody*, police are under a duty to advise the minor of his right to see them before interrogation can take place. (*In re Patrick W.* (1980) 104 Cal.App.3d 615 [163 Cal.Rptr. 848] [U.S. app. pending, see *People* v. *Burton* (1971) 6 Cal.3d 375, 382 (99 Cal.Rptr. 1, 491 P.2d 793)].) An officer who takes a minor into *custody* must take immediate steps to notify the minor's parents, guardian or relative. (Welf. & Inst. Code, § 627.)

■ A minor's parents need not be notified at the stage the investigation had reached here. Appellant was not in custody. He was 15 years of age and manifestly willing and able to deal with the officer on his own. (See conc. opn. of Justice Jefferson in *In re Patrick W., supra*, 104 Cal.App.3d at pp. 619-620 for a discussion of the age factor.) The officer's prior contact with the parents did not portend a positive result. Under these circumstances, failure to first contact appellant's parents did not render the detention unlawful.

*The Officer's Entry Into the Yard*

■ It is contended that the detention was invalid because effected by Officer Flores' entrance onto private property without a warrant, exigent circumstances or consent. Appellant argues that such entry on nothing more than reasonable suspicion of criminal activity violated his Fourth Amendment rights of privacy and freedom from unreasonable seizure. He adds to the ingredients the fact that he expressly ordered the officer off the property.

Appellant does not question the propriety of a warrantless investigatory detention when conducted in a public area. Its legality necessarily follows from the lawfulness of full-fledged warrantless arrests in public areas upon the existence of reasonable and probable cause. (Pen Code, § 836.) *People v. Ramey* (1976) 16 Cal.3d 263, 273 [127 Cal.Rptr. 629, 545 P.2d 1333].)

An arrest *within a home*, however, requires that a warrant first be obtained unless exigent circumstances or consent excuse its procurement. (*Ramey, supra*, 16 Cal.3d at pp. 275-276.) Appellant asks that we extend the *Ramey* requirement to the investigatory detention in the front yard of his home. We therefore examine the rationale of *Ramey*.

In *Ramey* our Supreme Court compared police entry into a home to arrest, with entry to search, and drew no distinction. The fundamental guarantee of the Fourth Amendment—privacy—places both on the same footing. The court, quoting *Dorman v. United States* (D.C. Cir. 1970) 435 F.2d 385, 389-390, stated: "'The Fourth Amendment protects a right of privacy. This is a right that is increasingly recognized in decisions involving this and other provisions of the Constitution as a core protection safeguarding all citizens against unwarranted intrusions by police and other government officials. [¶] The Fourth Amendment provides protection even as to arrest in a public place, though in such cases the requirement is only that there be probable cause and there is no additional requirement of recourse to a warrant. A greater burden is placed, however, on officials who enter a home or dwelling without consent. Freedom from intrusion into the home or dwelling is the archetype of privacy protection secured by the Fourth Amendment. In general a home may not be searched without a warrant notwithstanding probable cause.' . . . 'But the basic principle, the constitutional safeguard that, with room for exceptions, assures citizens the privacy and security of their homes unless a judicial officer determines that it must be overridden, is applicable not only in case of entry to search for property, *but also in case of entry in order to arrest a suspect*.'" (*Ramey, supra*, 16 Cal.3d at p. 273.)

While *Ramey* proscribes warrantless arrests within the home, a similar prohibition has been applied to entry into a home for purposes of detention. (*People v. Williams* (1979) 93 Cal.App.3d 40, 57 [155 Cal. Rptr. 414].) The lawful detention of an individual, though limited in scope and duration, nevertheless constitutes a seizure of the person

within the meaning of the Fourth Amendment. (See *Dunaway* v. *New York* (1979) 442 U.S. 200 [60 L.Ed.2d 824, 99 S.Ct. 2245].)

Although *Ramey* and *Williams* deal specifically with entries crossing the threshold of the house proper, we would overlook the gravamen of *Ramey*—the protection of privacy—were we to simply hold that its safeguards do not extend to any area surrounding the home. The correlative inquiry in warrantless police entry onto any private property to arrest or detain is whether the entry violates a reasonable expectation of privacy. This principle was observed in *People* v. *Tillery* (1979) 99 Cal.App.3d 975 [160 Cal.Rptr. 650], in which police officers having reasonable and probable cause to arrest a defendant, arrested him in the driveway of a home after asking him to step outside. The arrest without a warrant was held valid, the court stating: "The privacy interests protected by *Ramey* were satisfied when appellant voluntarily stepped outside." (*Id.,* at pp. 979-980.)

This court, in defining reasonable expectation of privacy, has noted that "the test of reasonableness is dependent upon the totality of facts and circumstances involved in the context of each case [citations] and does not turn merely upon whether a physical trespass is manifested [citations]." (*Burkholder* v. *Superior Court* (1979) 96 Cal.App.3d 421, 427-428 [158 Cal.Rptr. 86].)

Our Supreme Court has made clear that a police officer who makes an uninvited entry onto private property does not per se violate the occupant's Fourth Amendment right of privacy. The criterion to be applied is whether entry is made into an area where the public has been implicitly invited, such as the area furnishing normal access to the house. A reasonable expectation of privacy does not exist in such areas. (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33].)

We infer from the record that appellant's home was in a suburban residential neighborhood and had a typical unenclosed front yard and driveway adjacent to the public street. The officer entered and contacted appellant on the driveway approximately 20 feet from the street. This location was not one in which a right of privacy would normally exist. (See also *People* v. *Bradley* (1969) 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129].)

■ Appellant argues that privacy was invoked when he ordered the officer off the property. But the officer had the right and commensurate duty to deal with the problem at hand. He did not enter the property arbitrarily. Appellant had ignored the officer's earlier order to come to the street. If, despite the lack of indicia of privacy, the entry be deemed an intrusion, the entry and detention were authorized by the public concern to maintain peace in the neighborhood. The constitutionality of police intrusions is determined by weighing "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." (*Brown* v. *Texas* (1979) 443 U.S. 47, 51 [61 L.Ed.2d 357, 362, 99 S.Ct. 2689].)

The situation was not trivial and objectively required that remedial and preventive action be taken at that time. We find the entry into the yard was lawful.

*The Scope of Detention*

■ The next issue arises from appellant's contentions that his response to the detention was a proper exercise of his constitutional right to remain silent; that the officer could not lawfully insist that he answer any question; and therefore appellant's conduct was not a violation of Penal Code section 148.

We will assume for the sake of discussion that a violation of Penal Code section 148 may not be premised on a refusal to answer questions, including a request for identification.

Officer Flores initially advised appellant that he was there to investigate a complaint. He stated he wanted to talk to appellant and asked his name. Appellant answered that he did not have to talk and started to walk away. The officer attempted to stop him from leaving, whereupon appellant struggled to free himself.

The officer's right to detain having been established, it becomes necessary to determine the permissible scope of such detention. Did it simply end when appellant refused to talk to the officer? No. In detaining a person a police officer is not restricted to mere questioning but may conduct other limited investigation. (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) The present case

would have justified other reasonable procedures. For instance, the officer could have required appellant to wait briefly while he asked Mrs. Ahlstrom to confirm her identification. (*People* v. *York* (1980) 108 Cal. App.3d 779, 784-786 [166 Cal.Rptr. 717].)

We deem it unnecessary to speculate on a list of additional procedures which Officer Flores might have employed in the reasonable performance of his duties on the occasion in question. A police officer, presumably trained in the investigation of crime and the maintenance of peace in the community, should be afforded reasonable latitude in the use of acceptable procedures and his ingenuity toward the achievement of those ends. As stated in *Batts* v. *Superior Court* (1972) 23 Cal. App.3d 435, 438 [100 Cal.Rptr. 181]: "Innumerable contacts between police and citizens are intrusions into the citizen's privacy but these contacts have nothing to do with suspicion of criminal activity. *They arise from the police officer's duty to maintain peace and security, to protect citizens from harm or annoyance and to do all those innumerable miscellaneous tasks which society calls upon the police to do which have nothing to do with the detection of crime.*" (Italics added.)

Contacts of the variety described in *Batts* would not ordinarily justify involuntary detention. (*In re Tony C., supra,* 21 Cal.3d 888, 895.) But where, as here, an officer reasonably suspects a minor of recent unlawful conduct toward another, the temporary detention of such minor for investigation or for any measure including advice, warning or counselling aimed at preventing further harm or annoyance to the victim is not only proper but required. (See Welf. & Inst. Code, § 202.)

It may reasonably be argued that Officer Flores articulated no subjective purpose in detaining appellant except to question and elicit answers. The record, however, does not compel this conclusion. The sole question asked of appellant was his name. The officer otherwise advised appellant that he wanted to "talk to him." Flores testified at the hearing that it was his intention to identify the boy as a suspect, a statement consistent with having Mrs. Ahlstrom make a field identification. Further, Flores originally contemplated phoning appellant's parents, ostensibly for the purpose of preventing further similar incidents. This purpose was not abandoned when he took the opportunity to contact appellant personally. Appellant on the other hand frustrated any legitimate action the officer may have considered taking.

A construction of Penal Code section 148, pertinent to appellant's conduct, was recently set forth in *People* v. *Allen* (1980) 109 Cal. App.3d 981, 985-986 [167 Cal.Rptr. 502] (hg. den. Nov. 12, 1980), as follows: "Turning to the core issue, we first note that the language of the California statute (Pen. Code, § 148), unlike any others our research has turned up, uses the word 'delays' in addition to 'resists' and 'obstructs.' Since the officer had the legal right, indeed duty, (see *In re Tony C., supra*, 21 Cal.3d 888, 894) to detain appellant, appellant, if he was aware of the officer's desire, had the concomitant duty to permit himself to be detained. (Cf., Pen. Code, § 834a.) Therefore, on the face of the statute it would appear that the physical activity that appellant engaged in, flight and concealment, which *delayed* the officer's performance of his official duty, violated the statute." Since appellant here knew that the officer desired to detain him, it was his duty to submit to it. His forceful attempt to leave violated the statute. (Cf. also *Norwell* v. *City of Cincinnatti* (1973) 414 U.S. 14, 16 [38 L.Ed.2d 170, 172-173, 94 S.Ct. 187]; *In re Bacon* (1966) 240 Cal.App.2d 34, 51-53 [49 Cal.Rptr. 322].)

Officer Flores' action in holding appellant's arm to prevent his departure was within his authority to detain. It is implicit in a lawful detention that the person detained is not free to leave at will and may be kept in the officer's presence by physical restraint, threat of force or assertion of authority. (*In re Tony C., supra*, 21 Cal.3d at p. 895.)

Officer Flores' use of physical force here was made necessary only by appellant's unlawful attempt to end the officer's lawful detention. As such, the restraint was reasonable both in nature and timing.

*The Court's Findings*

Appellant contends, nevertheless, that the trial court actually limited its finding of violation of Penal Code section 148 to appellant's exercise of the constitutional right to remain silent.

In its oral decision, the court, after first finding that Officer Flores had sufficient reason to detain appellant, stated: "The youngster then refused to cooperate. He would not wait. He would not talk. He insisted on exercising the right to remain silent and his own constitutional rights. I don't think that was reasonable. I find beyond a reasonable doubt that the Petition has been established." At an earlier point during

the hearing the court stated that if "the suspect refuses to identify himself, the officer may take that person into custody."

We find no authority to support the court's legal conclusion that a person who merely refuses to identify himself or to answer questions *in a context similar to that before us* thereby violates Penal Code section 148 or otherwise furnishes ground for arrest.

The Legislature has required citizen self-identification in prescribed situations. Vehicle Code section 40302 calls for the production of a driver's license or identification upon arrest for a violation of that code; Vehicle Code section 12951 requires production of a driver's license by the driver of a motor vehicle upon the request of an officer. Penal Code section 647, subdivision (e) imposes a duty to identify oneself when such person loiters or wanders upon the streets or from place to place without apparent reason or business, and the surrounding circumstances reasonably indicate that the public safety demands identification. Section 647, subdivision (e) was held valid in *People* v. *Solomon* (1973) 33 Cal.App.3d 429 [108 Cal.Rptr. 867], in which strong consideration was given to the legislatively declared governmental purpose to be served by identification when the conditions described in the statute exist. (*Id.*, at p. 436; see also *California* v. *Byers* (1971) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535].) None of the statutory conditions requiring identification existed in this case.

Note is also taken of the United States Supreme Court's decision in *Brown* v. *Texas, supra*, wherein the defendant was prosecuted pursuant to a statute requiring a person to give his name and address to an officer who had lawfully detained him and requested such information. The defendant's conviction was reversed because the detention was unlawful, the officer having had no reasonable suspicion that the defendant was engaged or had engaged in criminal conduct. The court expressly refrained from deciding "whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements." (443 U.S. at p. 53, fn. 3 [61 L.Ed.2d at p. 363].) The court did, however, refer to that portion of Justice White's concurring opinion in *Terry* v. *Ohio* (1968) 392 U.S. 1, 34 [20 L.Ed.2d 889, 913-914, 88 S.Ct. 1868], in which he voiced the opinion that a person lawfully detained for investigation may be asked, but not compelled, to answer questions. (*Ibid.*; see also *Michigan* v. *DeFillippo* (1979) 443 U.S. 31 [61 L.Ed.2d 343, 99 S.Ct. 2627].)

From a factual standpoint, Officer Flores already had most of the identity data he could have reasonably required—the boy's address and surname. It is doubtful that appellant's refusal to divulge his given name could be deemed to have obstructed or delayed the officer to a degree justifying arrest.

A categorical requirement for identification or response to questions incident to a lawful detention would thus appear invalid in this case and to the extent that the trial court purported to hold to the contrary, we respectfully disagree. However, the court's order sustaining the petition is supported by its finding of the additional ultimate facts that "The youngster then refused to cooperate. He would not wait." Though succinctly stated, these factual findings sufficiently describe the conduct which we have concluded violated Penal Code section 148 as a matter of law. No further factual finding was required. (Welf. & Inst. Code, § 702; see *In re J. T.* (1974) 40 Cal.App.3d 633, 640-641 [115 Cal. Rptr. 553].)

█ Where a decision is based on the application of an erroneous rule of law, but a sound legal basis exists which supports it, such decision will be upheld on appeal (*People* v. *Tillery, supra*, 99 Cal.App.3d 975, 980; *People* v. *Evans* (1967) 249 Cal.App.2d 254, 257 [57 Cal. Rptr. 836]), particularly where, as here, a correct factual basis was in fact articulated in the record.

*The Court's Evidentiary Rulings*

We have carefully examined appellant's contentions urging error in several evidentiary rulings of the trial court.

As to evidence offered on the issue of excessive force by the officer, the court initially denied, but later permitted, the admission of such evidence. There was no prejudicial error.

Evidence that Officer Flores called for assistance following the arrests was excluded under Evidence Code section 352 as having slight probative value. We find no abuse of discretion.

Evidence that Officer Flores admitted telling appellant, "you will talk to me or I will arrest you," was relevant and material and should have been received. But the same evidence was subsequently permitted relative to Flores' state of mind. The error was not prejudicial.

The offer in evidence of a tape recording to refresh the recollection of appellant's own witness was properly rejected. (Witkin, Cal. Evidence (2d ed. 1966) §§ 1170, 1170(b), p. 1083.)

The order appealed from is affirmed.

Newsom, J., concurred.

**RACANELLI, P. J.**—I respectfully dissent.

While the record, arguably, demonstrates a valid basis for a temporary detention consistent with constitutional minimums (see *Brown* v. *Texas* (1979) 443 U.S. 47, 51 [61 L.Ed.2d 357, 362, 99 S.Ct. 2689]; *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957]; and cf. *People* v. *Michael* (1955) 45 Cal.2d 751 [290 P.2d 852]) whether the challenged jurisdictional finding rested upon a "sound legal...[or] correct factual basis" (majority opn., *ante*, p. 780) is unascertainable. As the majority grudgingly recognizes, it is seriously doubtful whether a mere refusal to answer questions in a detention setting—without more—can ever furnish an adequate basis for an arrest. (See *Terry* v. *Ohio* (1967) 392 U.S. 1, 34 [20 L.Ed.2d 889, 913-914, 88 S.Ct. 1868] (conc. opn. of White, J.); *Michigan* v. *DeFillippo* (1979) 443 U.S. 31 [61 L.Ed.2d 343, 99 S.Ct. 2627]; *Brown* v. *Texas, supra*; cf. *Norwell* v. *City of Cincinatti* (1973) 414 U.S. 14 [38 L.Ed.2d 170, 94 S.Ct. 187] [1st Amend. analysis].) Here, it would appear that the pivotal finding was based to an appreciable degree upon the minor's resolute insistence to remain silent and to be let alone.* Although lawful grounds *might* have existed to support a misdemeanor violation as the majority concludes, I am aware of no rule of law which requires that doubt must be automatically resolved in favor of the state at the risk of impermissibly compromising fundamental constitutional rights. Accordingly, I would reverse and remand with instructions that the trial

---

*In sustaining the wardship petition, the trial court articulated its reasons in the following manner: "...it just seems to me under these circumstances, where the Officer was advised that a potential misdemeanor, malicious mischief, had taken place. He went to the deck, he observed the piece of mud on the deck. He then went to interrogate the youngsters next-door because there was a suspicion in his mind they were the ones who were responsible. [§] *The youngster then refused to cooperate. He would not wait. He would not talk. He insisted on exercising the right to remain silent and his own constitutional rights.* I don't think that was reasonable. I find beyond a reasonable doubt that the Petition has been established." (Italics added.) The court later added that if "the suspect refuses to identify himself, the officer may take that person into custody."

court expressly indicate whether the implied finding that the minor resisted or obstructed the officer in the discharge of his official duty is based upon factual circumstances other than the invocation of the constitutional right to remain silent.

A petition for a rehearing was denied December 29, 1980. Racanelli, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied February 5, 1981. Bird, C. J., was of the opinion that the petition should be granted.