Filed 10/22/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re JUAN A., a Person Coming Under the Juvenile Court Law. | |
| | D064890 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J233602) |
| v. | |
| JUAN A., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard R. Monroy, Judge.  Reversed.

Alissa Bjerkhoel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

Juan A. (the Minor) was charged by a petition filed in juvenile court with one count of misdemeanor battery on school property (Pen. Code,[1] § 243.2, subd. (a)(1)); resisting an officer (§ 148, subd. (a)(1)); disturbing the peace (§ 415); and felony threatening a public officer or employee (§ 71).

At the time of the adjudication hearing, the prosecution's motion to dismiss the misdemeanor battery count was granted. Following the presentation of evidence the court granted the defense motion under Welfare and Institutions Code section 700.1 to dismiss the felony count for insufficient evidence.

The court made true findings on the resisting an officer charge and on the disturbing the peace charge.

The Minor was placed on formal probation. He filed a timely notice of appeal.

The Minor appeals contending there was not sufficient evidence to support the true findings on either count. After careful examination of the record, we agree with the Minor that the prosecution failed to prove the elements of either offense. Thus the court should not have made true findings on those charges.

STATEMENT OF FACTS

The facts of this case are not seriously disputed, although the factual statement in the respondent's brief omits a material statement of the police officer in this case in which she explained that she never ordered the Minor to stop. We believe the statement of facts

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

in the appellant's opening brief is accurate and we set it forth here as background for the discussion which follows.

Jason Gentile was the athletic director at King Chavez High School at 201 A Street in downtown San Diego. Appellant came to Gentile's office whenever he "c[a]me out of class for any reason," and Gentile felt the two had a "pretty good rapport[.]" On June 13, 2013, Gentile was on lunch duty outside when he heard a commotion and turned around to see the Minor being punched repeatedly by another student. The Minor did not appear to be fighting back; he was "covering himself" in a protective position. Gentile pulled the other student off of the Minor, took him to the main office, and then returned for the Minor. The Minor was crying and "mad."

Inside the school building, on the way to the bathroom on the second floor, the Minor punched a wall and a garbage can two or three times and said "some f words." His fists were clenched, and he was "really mad." Gentile escorted the Minor to the bathroom so that he could freshen up and calm down. But although the Minor splashed some water on his face, he did not calm down.

Gentile said, "Let's calm down. . . . Let's talk about it," and tried to get the Minor to accompany him to his office. The Minor said, "No . . . I'm going to get a knife and gun and I'm going to end this." He said he was going to come back to the school. He went back downstairs and out the front door of the school building. Gentile followed him. Once outside, the Minor walked down A Street and turned south on Third Avenue. Gentile tried to talk him down and said, "Let's go grab a soda." But the Minor merely turned right on C Street and headed west. Gentile continued to follow him, but at the

3

corner of C Street and First Avenue, the Minor suddenly threw down his backpack and rosary and ran off. Gentile could not keep up with him, so he picked up the Minor's discarded belongings and returned to the school, where he locked the entrance door and called the police.

The school's standard procedure "any time anyone says anything involving a gun or violence" is to lock the school down. Accordingly, the students were called in from lunch and brought inside the locked school for their safety. In the meantime, Gentile waited for the police at the front desk near the entrance door. About 15 minutes from the time Gentile had last seen him, the Minor came to the school's front door and tried to get in, but the door was locked. Gentile went outside to speak with him. The Minor still appeared angry. He said, "Where is he[?] Where is he[?]" Gentile simply told the Minor, "I can't let you back in." The Minor turned around, crossed the street, and sat down on the sidewalk across from the school.

San Diego Police Department Officer Linda Tousley arrived at that moment and spoke with Gentile, who gave her a brief explanation of the situation. Officer Tousley began walking toward the Minor. The Minor immediately stood up and started walking away. Officer Tousley told the Minor to stop; she said she wanted to talk to him. The Minor was angry; he said, "I don't have time for this shit," and kept walking.

Officer Tousley continued to follow the Minor from a distance of about 15 to 20 feet. She did not want to get too close because she was alone and the Minor was believed to be armed with a firearm or knife, but she needed to stop him because of the danger he posed to others. In an effort to engage the Minor, she asked him if his name was Juan

4

and told him she wanted to hear his side of the story. The Minor said, "You can call me Juan or whatever the fuck you want."

Officer Tousley repeatedly told the Minor to stop--indeed, she told him "at least six to eight times"--and repeatedly asked him questions. The Minor did not slow down, stop, or answer her questions. He merely clenched his fists, made "general" remarks interspersed with profanity, and kept walking away from her due north.

When Officer Tousley had followed the Minor about two blocks, the Minor took off his shirt, turned around to face her, and looked at her while he wrapped his shirt around his fist. It appeared to Officer Tousley to be "fighting type behavior." Just then, however, backup officers summoned by Officer Tousley arrived from the north and ran towards the Minor. As they reached him, the Minor finally complied with Officer Tousley's command to put his hands behind his back.

After being detained, the Minor told Officer Tousley that the fight at school had started over a minor misunderstanding. He said the same student had tried to fight him in the past, but the Minor had walked away. He denied saying anything to Gentile about a gun, but admitted he said he was going to get a knife and come back to "deal with" his antagonist. He further stated that that was in fact his plan--indeed, he even specified he would get the knife from the kitchen but Gentile foiled it by following him. So, he abandoned the plan and instead went to a local continuation school, whose student body includes many probationers, to find someone to help him beat up the student who had punched him.

5

*Defense*

The Minor testified in his own defense. He admitted that he saw Officer Tousley approaching him when he was seated on the sidewalk and that he stood up and walked away when he saw her. She responded by saying, "Come to me," and telling him that she did not know what was going on. The Minor admitted he told her, "I don't give a shit," and kept walking away. He also admitted she repeated the command for him to "come to [her]," but he "just kept on walking."

The Minor denied Officer Tousley ever told him to stop. But he admitted he knew the officer wanted to arrest him and that he saw her reaching for her handcuffs. Nonetheless, he kept walking away from her until an officer with a baton confronted him.

On cross-examination, the Minor claimed he did not think Officer Tousley had been informed about the fight and his threats. He admitted that he said something to Gentile about knives, however. He also admitted that he knew Officer Tousley wanted to talk to him, but he walked away from her because he did not feel like talking to her. And he admitted he knew Officer Tousley intended to detain him if she got her hands on him, so he just kept walking away.

## DISCUSSION

This case involves the Minor, a teenager who suffered a beating at the hands of another student in front of approximately 40 of his fellow students. Mr. Gentile, a school teacher, who knew the Minor and had a rapport with him attempted to calm the Minor and console him. During their walk through the school the Minor was distraught, crying, humiliated and angry. He hit a wall, kicked a trash can and cursed. The Minor then ran

6

away to get a knife, which he did not get. When he returned to school he was not admitted so he sat on a curb across the street.

The police officer who contacted him was a school resource officer and was trained to deal with students. She was aware of what happened to the Minor and his state of distress. She approached the Minor asking him to talk with her and to tell her his side of the story. He walked away and the officer followed him asking him to stop and talk. The Minor did not run or pick up the pace of his walking. The officer testified she never ordered the Minor to stop or commanded him to do anything. She was using her training to try to defuse a tense situation and to calm the Minor. When police ordered him to stop and raise his hands he did so without resistance.

Somehow, this scenario, originally charged in part as felony conduct, produced true findings for disturbing the peace (hitting the wall and kicking a trash can) and resisting an officer (walking as the officer followed him, encouraging him to talk to her). Whatever the motivation to prosecute this case, the evidence presented did not support a true finding on either count.

A. Standard of Review

When we consider a challenge to the sufficiency of the evidence we apply the familiar substantial evidence standard of review. Under that standard we review the entire record in the light most favorable to the trial court judgment. We draw all reasonable inferences in favor of the judgment, but we do not make credibility decisions nor do we weigh the evidence. At the end of the analysis we determine whether there is sufficient substantial evidence from which a reasonable trier of fact could find each

7

element of the offense has been proved beyond a reasonable doubt. (*People v. Wilson* (2008) 44 Cal.4th 758, 806; *People v. Zamudio* (2008) 43 Cal.4th 327, 357; *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1371-1372.)

## B. Resisting a Police Officer

Section 148, subdivision (a)(1) provides: "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

The act upon which the true finding on this offense was based was that of the Minor walking away from the officer, knowing she wanted to talk with him. There is no evidence of physically resisting the officer. Thus, the question presented here is whether, under the circumstances of the case, failing to stop and talk to the officer was a criminal act of resisting. Our answer is the act of walking away from an officer that merely wants to "talk" and has not asserted any authority or attempted to physically restrain a person is not resisting.

Certainly under some circumstances flight, or seeking to get away from an officer who has asserted lawful authority to detain the person, can constitute criminal resisting. (*In re Gregory S.* (1980) 112 Cal.App.3d 764, 778 (*Gregory S.*); *People v. Allen* (1980)

8

109 Cal.App.3d 981, 986-987.)  The respondent relies heavily on *Gregory S.* to support the true finding.  We think that reliance is misplaced.

In *Gregory S, supra*, 112 Cal.App.3d at page 771, the court recounted that the minor in that case kept walking when an officer told him he wanted to talk to the minor. The minor at one point told the officer to get off of the property.  At that point the officer took the minor by the arm, whereupon the minor struggled and attempted to get free.

The appellate court upheld the resisting an officer true finding based on the minor's conduct after his detention.  The court observed:  "We find no authority to support the [trial] court's legal conclusion that a person who merely refuses to identify himself or answer questions *in a context similar to that before us* thereby violates Penal Code section 148 or otherwise furnishes ground for arrest."  (*Gregory S., supra,* 112 Cal.App.3d at p. 779, original italics.)

The appellate court rejected the trial court's finding of guilt based upon the minor's refusal to give his name.  The court affirmed the true finding because there was evidence that the minor had physically resisted the officer's effort to detain him by grabbing his arm.

In *People v. Quiroga* (1993) 16 Cal.App.4th 961, 966 (*Quiroga*), the court dealt with sufficiency of evidence to support a conviction for violating section 148.  There were two sets of actions by the defendant which were argued to support the conviction. The first occurred when the officer legitimately entered a residence to conduct an investigation.  The defendant was argumentative, refused to cooperate and refused to give

9

his name. At the time of booking the defendant continued his refusal to give his name and continued to obstruct.

The court held that the postarrest behavior would support the conviction, but that the prearrest conduct would not. We quote the court's analysis:

> "We find nothing in appellant's conduct before his arrest that might justify a charge of violating Penal Code section 148. It is true that he complied slowly with Officer Stefani's orders, but it surely cannot be supposed that Penal Code section 148 criminalizes a person's failure to respond with alacrity to police orders. Moreover, appellant possessed the right under the First Amendment to dispute Officer Stefani's actions. '[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.' [Citation.] Indeed, '[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.' [Citation.] While the police may resent having abusive language 'directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment.' " (*Quiroga, supra,* 16 Cal.App.4th at p. 966.)

The record clearly shows the officer in this case made no effort to detain the Minor until backup officers arrived. Like Mr. Gentile, the officer's goal was to calm the Minor so she could conduct a further investigation. She made clear that she never ordered or commanded the Minor to stop.

Consistent with the analysis in *Quiroga*, *supra*, 16 Cal.App.4th 961, we do not believe that mere expression of a desire not to talk with police is criminal. The officer here certainly had reasonable suspicion which would support a detention. Had she attempted to detain the Minor, his resistance could justify a true finding. In this case, however, the Minor yielded immediately upon police demand. That he did not want to

10

talk to the officer before that point was not a criminal act. Accordingly, there is no substantial evidence in this record to support the true finding on section 148. That finding must be reversed for insufficient evidence.

## C. Disturbing the Peace

The Minor was found to have disturbed the peace within the meaning of section 415. The parties agree there are three ways to commit that offense: (1) where the person unlawfully fights in a public place or challenges another person in a public place to fight; (2) where the person maliciously and willfully disturbs another person by loud and unreasonable noise; or (3) where the person uses offensive words in a public place which are inherently likely to provoke an immediate violent reaction. (§ 415.)

The juvenile court and the parties on appeal agree that section 415, subdivision (1) above is inapplicable here. The Minor was the victim of an assault by another and struck no blows against his aggressor. Thus we consider the evidence in support of section 415, subdivisions (2) or (3).

The prosecution and the respondent contend the Minor disturbed the peace during his walk with Mr. Gentile through the school hallway. The Minor was angry, uttered curse words, struck a wall with his fists and kicked a trash can. Under other circumstances such activity might support a true finding. However, here it does not. First, there is no evidence that anyone other than Mr. Gentile was anywhere near the Minor when he was acting out. Although the prosecutor asked questions about yelling when questioning Mr. Gentile, the witness never said the Minor was loud or that he yelled.

11

The Minor's anger, which Mr. Gentile found to be quite reasonable, was not directed to the teacher, or any identifiable person. The only evidence is that one person was present, he was sympathetic with the Minor, and was trying to calm and console him. As Gentile said, "I can't blame him for being upset at the time."

Even if there was evidence that the Minor was loud, which there is not, loud shouting or noise, by itself is not enough to be criminal conduct. The noise must be coupled with a clear and present danger of violence or where the noise is not intended as a communication and is specifically designed to disturb persons. (*In re Brown* (1973) 9 Cal.3d 612, 621.) In short, there is no evidence to support a true finding under subdivision (2) of section 415.

Turning then to section 415, subdivision (3), the prosecution must prove a person used offensive words in a public place which were inherently likely to provoke an immediate violent reaction. In other words the statements must have been made in a provocative manner that present a clear risk of immediate violence. (*Jefferson v. Superior Court* (1975) 51 Cal.App.3d 721, 725.) Vulgar, profane or highly inappropriate words alone do not support a finding that the speech was criminal. (*People v. Callahan* (1985) 168 Cal.App.3d 631, 635.)

In order to properly analyze alleged criminal speech, we must consider the circumstances, including the person to whom the speech was addressed. For example, "fighting words" addressed to a police officer have been found not to violate section 415 because police are trained to deal with such confrontations and exercise a higher degree of restraint than may be the case with the average citizen.

12

Here, the Minor did curse in front of Mr. Gentile, who was not offended, nor likely to be spurred to violence. He testified:

> "Q. You said during that time you believe he may have cursed; is that correct?
>
> "A. Yeah. On the way up--I mean he was upset this happened in front of a lot of people, and I--you know, I can't blame him for being upset at the time so yes."

It is true the Minor said he was going to run off and find a knife or a gun, apparently so he could settle up with the person who beat him. The remark was not directed at Mr. Gentile and there is no evidence anyone else was present. There were consequences of such comment because of school security policy to lock down the school when there is even mention of a weapon. Such remark may well be the subject of school discipline, but it does not fit within the definition of disturbing the peace. Whether it might have violated some other statute is not before us.

People often make unfortunate, crude or inappropriate remarks, even in public. That said, the protections of the First Amendment can only be lost where there is proof of behavior that clearly falls with the statutory provisions of a defined offense. Whatever the conduct that might have occurred in this case, we have only the testimony at the adjudication hearing. That testimony does not provide substantial evidence to prove criminal conduct beyond a reasonable doubt. Accordingly the true finding of a violation of section 415 must be reversed.

In light of our disposition of the true findings, the Minor's contentions regarding vagueness of the probation conditions are moot.

## DISPOSITION

The true findings for resisting a police officer and for disturbing the peace are reversed.  The juvenile court is directed to dismiss the petition.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


NARES, J.

14